[L.A. No. 30886. Dec. 22, 1978.]

In re MITCHELL P., a Person Coming Under the Juvenile Court Law.
STEWART C. SMITH, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
MITCHELL P., Defendant and Appellant.

## COUNSEL

Chuck Nacsin, under appointment by the Supreme Court, and Bobby R. Vincent for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth, A. Wells Petersen and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CLARK, J.—Appeal by Mitchell P., a minor, from juvenile court judgment finding him to come within provisions of Welfare and Institutions Code section 602, and adjudging him a ward of that court.[1] Appellant contends that because the only evidence received at the jurisdictional or adjudicatory hearing was uncorroborated testimony of an accomplice to the alleged misconduct, the judgment must be reversed. (See Pen. Code, § 1111.) We disagree and affirm judgment.

Appellant and other juveniles entered a jewelry store at night through a broken window, removing jewelry valued at $13,000.

In a petition filed pursuant to section 602, appellant was alleged to have committed acts constituting burglary (Pen. Code, § 459), grand theft (Pen. Code, § 487) and receiving stolen property (Pen. Code, § 496). At the jurisdictional hearing one of the juveniles entering the store with appellant was granted immunity from further proceedings against him and testified he had witnessed appellant participate in the affair. The juvenile court judge found the allegations relating to Penal Code section 496 to be true, those relating to Penal Code sections 459 and 487 to be untrue. Appellant was declared a ward of the court and returned to the custody of his parents. It is undisputed the only evidence of appellant's misconduct is the accomplice testimony.

[1]Unless otherwise specified, all statutory references are to provisions of the Welfare and Institutions Code.

Section 602 provides in pertinent part: "Any person who is under the age of 18 years when he violates any law of this state . . . defining crime . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

■ Had appellant been criminally charged and convicted based solely on the accomplice's uncorroborated testimony, Penal Code section 1111 would require reversal of the conviction. That section provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by other such evidence as shall tend to connect the defendant with the commission of the offense . . . ." However, a finding of wardship pursuant to section 602 does not constitute a "conviction" within the meaning of Penal Code section 1111 (see § 203 ["An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose . . . ."]), and our courts have uniformly held Penal Code section 1111 has no application in juvenile court proceedings. (*In re R. C.* (1974) 39 Cal.App.3d 887 [114 Cal.Rptr. 735]; *In re D. L.* (1975) 46 Cal.App.3d 65, 73 [120 Cal.Rptr. 276]; *In re Eugene M.* (1976) 55 Cal.App.3d 650, 657 [127 Cal.Rptr. 851].) Appellant contends the juvenile court's refusal to allow him to assert the accomplice testimony rule violates his constitutional rights.

■ The accomplice testimony rule is not constitutionally based. Rather it was court created in the first instance. (*People* v. *Eckert* (1860) 16 Cal. 110, 112.) *Eckert* reached its holding not on constitutional grounds but on English common law (see 7 Wigmore, Evidence, § 2056, fn. 5) and today's legislative codification of the rule may be modified or repealed without infringing constitutional rights. The rule does not exist in many states and where it does exist it is normally of statutory origin. (7 Wigmore, Evidence, § 2056, p. 319.) Federal courts have rejected the rule, holding "a conviction may be based on the uncorroborated testimony of an accomplice . . . ." (*United States* v. *Turner* (9th Cir. 1975) 528 F.2d 143, 161; see also *United States* v. *Daniel* (9th Cir. 1972) 459 F.2d 1029.) Therefore, due process does not require the rule be adopted in either criminal or juvenile proceedings.

■ A more difficult constitutional issue is presented by appellant's contention that, because the state deems uncorroborated accomplice testimony insufficient to support a criminal conviction, equal protection requires the same quality of proof in support of a juvenile jurisdictional finding. The Supreme Court in *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068] held that a minor cannot be subjected to "institutional confinement on proof insufficient to convict him were he an adult." (*Id.,* at p. 367 [25 L.Ed.2d at p. 377].)

At issue in *Winship* was the *degree* of factual proof of charged misconduct. *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]

established that, while due process does not require an adjudicatory hearing conform to all requirements of a criminal trial, it nevertheless requires " 'the essentials of due process and fair treatment' " at such a hearing (*id.,* at p. 30 [18 L.Ed.2d at p. 548]). One such essential in juvenile proceedings is that the minor be adjudicated by proof beyond a reasonable doubt—a due process rather than an equal protection compulsion according to *Winship. Winship* thus holds that due process compels only the reasonable doubt degree of proof for adjudicatory findings in either criminal or juvenile proceedings. As we have seen, due process simply does not compel the accomplice corroboration rule in either criminal or juvenile proceedings.

Appellant's equal protection contention cannot be rejected, of course, merely because it is not supported by *Winship.* The state has created a classification—placing those persons charged with crimes and subject to criminal penalties in a category different from those treated as juveniles and subject to restrictions the state deems to be for their best interests and necessary for their rehabilitation. The issue is whether the state can require a lesser *quality of evidence* in juvenile proceedings. This is not to say *degree of proof* may be different in the two proceedings—*Winship* established proof beyond reasonable doubt shall apply to juvenile as well as criminal proceedings. The issue is whether evidence deemed insufficient in a criminal proceeding—although standing alone it may constitute proof of criminal conduct beyond reasonable doubt—is sufficient in a juvenile proceeding, so long as the charged misconduct is established by proof beyond a reasonable doubt.[2]

Appellant appears to argue on equal protection grounds that all rules of evidence in criminal proceedings must extend to juvenile court proceedings because in both criminal and juvenile proceedings the person charged faces the possibility of loss of freedom. ██ ██ ██ However, disparities among classes are constitutionally permissible when reasonably related to proper purpose.[3] In *T.N.G.* v. *Superior Court*

[2]This case does not present the issue of admissibility of accomplice testimony. Appellant is not aided by the provisions of section 701 requiring an adjudication to be "supported by evidence, legally admissible in the trial of criminal cases." Penal Code section 1111 does not render uncorroborated accomplice testimony inadmissible. (See *People* v. *Bowley* (1963) 59 Cal.2d 855, 858 [31 Cal.Rptr. 471, 382 P.2d 591; 96 A.L.R.2d 1178]; *People* v. *Santos* (1933) 134 Cal.App. 736, 746 [26 P.2d 522].)

[3]There is no basis herein for application of the "strict scrutiny" as opposed to the "rationality" test in measuring permissible classifications. (See *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375].) We do not here make a classification directly affecting a fundamental interest as in *Olivas.* There the deprivation of liberty for a misdemeanant committed to the Youth Authority for a term in excess of the terms of

(1971) 4 Cal.3d 767 [94 Cal.Rptr. 813, 484 P.2d 981] we upheld procedures permitting the court to retain in an unsealed condition juvenile court records of charged misconduct even though no adjudication followed. While juveniles charged with—but not convicted of—criminal violations were entitled to immediate sealing of their records, no denial of equal protection resulted because retention was shown to relate to rehabilitation. (*Id.,* at pp. 782-783.) "Such rehabilitative need for retaining arrest records does not pertain to the case of a minor who has been dealt with as an adult in the criminal courts. The adult criminal courts neither perform the special rehabilitative functions of the juvenile court nor provide the particular procedures for protective confidentiality of the juvenile court. Thus, the Legislature has reasonably provided to minors who are treated as adults in criminal courts the immediate sealing of any arrest record . . . ." (*Id.,* at pp. 783-784.)[4]

The critical question is whether the purpose served by the accomplice corroboration rule permits, as in the case of record sealing, disparate treatment between persons charged with crime and persons charged with juvenile misconduct. We examine the differing effects of the rule when applied in different procedures.

Accomplice testimony is generally suspect because it may have been proffered in the hope of leniency or immunity, and thus greater weight may be accorded such testimony than is warranted. (See *People* v. *Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734].) However, when a judge rather than a jury is trier of fact it is not unreasonable to assume he is more critical of accomplice testimony and more likely to accord it appropriate weight. Although juries are generally required upon demand by defendant in a criminal proceeding, the state is not constitutionally compelled to provide a jury in juvenile proceedings (see *McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976]), the juvenile court judge or referee being the trier of fact. (Cf. *People* v. *Superior Court (Carl W.)* (1975) 15 Cal.3d 271 [124 Cal.Rptr. 47, 539 P.2d 807].) It thus follows there is less reason for application of the arbitrary accomplice corrobora-

---

confinement had he been committed to jail, was held to require the strict scrutiny analysis *and to be unconstitutional on equal protection grounds. Here, there is no classification* based on a deprivation of liberty or any other fundamental right. The classification affects only the kind—but not the degree—of otherwise proper evidence which may support a finding of misconduct. As the evidence must otherwise conform to constitutional demands, no fundamental right is affected.

[4]Another instance in which equal protection has been held not to foreclose disparate treatment between juveniles and criminal defendants is the unavailability in juvenile court of dismissal of a charge following successful completion of probation. (*In re S. A.* (1970) 6 Cal.App.3d 241 [85 Cal.Rptr. 775].)

tion rule in juvenile court proceedings. (See, *In re R. C., supra,* 39 Cal.App.3d 887, 895.)

While adjudication of a juvenile offender may well result in an incarceration which is not unlike that in the case of persons convicted of crimes, it must be acknowledged that a person convicted of a serious crime is generally exposed to a greater and more onerous term of confinement than a juvenile ward charged with the same misconduct. In providing for the kind of evidence which can constitute proof of charged misconduct, it is not unreasonable that our Legislature has placed more severe limitations on evidence which may be used to prove the criminal violation, bearing in mind of course that the degree of proof calls for the same reasonable doubt standard in each instance.

Although the rehabilitative purpose of the juvenile court may not warrant a lesser degree of proof of the charged misconduct, the Legislature may well consider that judicial intervention in the interest of rehabilitating an impressionable minor outweighs policies against the use of particular kinds of testimony not otherwise constitutionally proscribed.[5] It is the Legislature's prerogative, acting within constitutional guidelines, to strike a proper balance between these competing interests.

In the absence of direct constitutional prohibition or compulsion, equal protection has not been held in any instance to compel in juvenile proceedings evidentiary determinations identical to those in criminal courts.[6] In *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528, the Supreme Court stated the broad issue to be whether there was a " 'constitutional right to a jury trial in juvenile court' " (*id.,* at p. 535 [29 L.Ed.2d at p. 655]), but purported to dispose of that issue on a due process analysis. However, it recognized the equal protection issue, summarily disposing of it.[7] In holding that a juvenile is not entitled to a jury determination of a

---

[5]The purpose of the juvenile court system is "guidance and treatment for the juvenile." (*T.N.G.* v. *Superior Court, supra,* 4 Cal.3d 767, 775.)

[6]As a matter of due process or the right against self-incrimination, juveniles are entitled to the exclusion of illegally seized evidence, unconstitutional pretrial identification, judicial admissions not preceded by an explicit waiver of rights, and statements obtained without constitutional admonishments. (See, *In re R. C., supra,* 39 Cal.App.3d 887, 897.) They are also protected against multiple prosecutions (*In re Benny G.* (1972) 24 Cal.App.3d 371, 373 [101 Cal.Rptr. 28]) and from being twice placed in jeopardy in juvenile court proceedings (*Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664]).

[7]The Supreme Court stated: "Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments necessarily equate the juvenile proceeding—or at least the adjudicative phase of it—with the criminal trial. Whether they should be so

jurisdictional issue, the Supreme Court noted that the purpose served by juvenile court proceedings—a purpose different from that served by criminal prosecutions—could not be accomplished if those proceedings were burdened by the full panoply of rights accorded criminal defendants. "If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." (*Id.,* at p. 550 [29 L.Ed.2d at p. 663].) Surely, if there are sufficient distinctions between criminal and juvenile proceedings to justify granting the constitutional right to a jury to the former and denying it to the latter, those same distinctions must also apply to the quality of evidence—providing that in both proceedings charged misconduct is established by proof beyond a reasonable doubt.

We conclude that when due process and other constitutional demands have been satisfied, reasonable differences in criminal and juvenile evidentiary procedures are constitutionally permissible.

The judgment is affirmed.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

In reaching the conclusion that a minor may be adjudged to have committed a crime solely upon the uncorroborated testimony of a witness, who had been given immunity for his own admitted criminal acts, the majority err twice. They violate the Legislature's mandate that in the juvenile court system, "accomplice testimony should be surrounded with the usual safeguards . . . ."[1] They also contradict the constitutional prohibition that judicial "intervention [into the life of a minor] cannot take the form of subjecting the child to the stigma of a finding that he

equated is our issue. Concern about the inapplicability of exclusionary and other rules of evidence . . . chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates. [¶] If the formalities of the criminal adjudicate process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." (*Id.,* at pp. 550-551 [29 L.Ed.2d at p. 664].)

[1]Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960) page 30. (See, *post,* fn. 5 and accompanying text.)

violated a criminal law and to the possibility of institutional confinement *on proof insufficient to convict him were he an adult.*"[2]

Today's decision by this court provides further support for the conclusion of one scholar that "few fields exist in which more serious coercive measures are applied, on such flimsy objective evidence, than in that of juvenile delinquency." (Bovet, Psychiatric Aspects of Juvenile Delinquency (World Health Organization, 1951) p. 79, quoted in *In re Gault* (1967) 387 U.S. 1, 19, fn. 25 [18 L.Ed.2d 527, 541, 87 S.Ct. 1428].) It is, indeed, sad to see this distinguished court join such a questionable tradition.

## I

The rule that a conviction may not be had upon the uncorroborated testimony of an accomplice has deep historical roots in this state's criminal law. The rule was adopted at the very first session of the California Legislature. (Stats. 1850, ch. 119, § 405, p. 304.) It was reenacted in the Criminal Practice Act of 1851 (Stats. 1851, ch. 29, § 375, p. 252), and, when the penal laws were codified in 1872, it became Penal Code section 1111.[3] The accomplice-corroboration rule has been retained with little change since its codification.[4]

This court has observed that "[t]he requirement of section 1111 of the Penal Code that accomplice testimony must be corroborated is a convincing indication of the legislative intent and policy that such evidence is to be regarded as untrustworthy and not to be believed unless fortified by other evidence tending to connect a defendant with the commission of the offense charged." (*People* v. *Dail* (1943) 22 Cal.2d 642, 655 [140 P.2d 828].) The Legislature's reasons for this determination are numerous and have been often chronicled. It is useful to touch upon

---

[2]*In re Winship* (1970) 397 U.S. 358, 367 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068] (fn. omitted and italics added).

[3]Thus, the majority opinion errs when it states that the rule "was court created in the first instance. (*People* v. *Eckert* (1860) 16 Cal. 110, 112.)" (Maj. opn., *ante*, at p. 949. The rule had been the *statutory* law of this state for nearly a decade prior to *Eckert* (cf., Stats. 1850, ch. 119, § 405, p. 304), and was never a feature of the common law. (*People* v. *Clough* (1887) 73 Cal. 348, 352 [15 P. 5]; *People* v. *Hooker* (1954) 126 Cal.App.2d 394, 399 [272 P.2d 839]; Note (1954) 54 Colum.L.Rev. 219, 233, and fn. 59 at p. 234; see also 7 Wigmore, Evidence, § 2056, fn. 5.)

[4]A 1911 amendment to the rule did not materially affect it. (See *People* v. *Coffey* (1911) 161 Cal. 433, 438 [119 P. 901].) Section 1111 was last amended in 1915, when the Legislature added the second sentence defining an "accomplice." (Stats. 1915, ch. 457, § 1, p. 760.)

them here because, as the Court of Appeal has noted, they are equally applicable to jurisdictional hearings in juvenile court. (See *In re R. C.* (1974) 39 Cal.App.3d 887, 894-895 [114 Cal.Rptr. 735].)

An accomplice is recognized to be a "tainted" source of evidence. (*People* v. *Gordon* (1973) 10 Cal.3d 460, 471 [110 Cal.Rptr. 906, 516 P.2d 298].) He has a strong motive to fabricate testimony which incriminates innocent persons or which attributes the more active roles or the more serious offenses to others, in order that he might gain leniency or even immunity for his own criminal actions. (See, e.g., *People* v. *Gordon, supra,* 10 Cal.3d at p. 468; *People* v. *Wallin* (1948) 32 Cal.2d 803, 808 [197 P.2d 734].) An accomplice has other reasons, as well, to "tailor the truth to his or her own self-serving mold . . . ." (*People* v. *Gordon, supra,* 10 Cal.3d at p. 471.) The accomplice may well be a friend of those who committed the crime with him, and he may attempt to keep them out of trouble by incriminating an innocent person instead of his actual associates. In addition, the accomplice may "purposely lie in order to convict an innocent man, thereby carrying out a threat or obtaining revenge against him." (Comment, *Accomplice Corroboration—Its Status in California* (1962) 9 UCLA L.Rev. 190, 192.) Finally, an accomplice—especially one who, like the accomplice in the present case, is himself a minor—may be under great parental or societal pressure to focus the blame for his own misconduct on someone else. (Heydon, *The Corroboration of Accomplices* (Eng. ed.) 1973 Crim. L.Rev. 264, 276; see also *People* v. *Gordon, supra,* 10 Cal.3d at pp. 469-470.)

The danger in using the testimony of an accomplice is not limited to its lack of trustworthiness. The problem is compounded by the fact that an accomplice's fabrications "will usually have a seeming plausibility because the accomplice will have familiarity with at least some details of the crime: 'an accomplice is not merely a witness with a possible motive to tell lies about an innocent accused but is such a witness peculiarly equipped, by reason of his inside knowledge of the crime, to convince the unwary that his lies are the truth.' " (Heydon, *supra,* at p. 266; *People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].) Thus, "the chance of successful perjury is increased by the fact that the accomplice, completely familiar with the events of the crime, can fabricate a believable story which can withstand cross-examination." (Note (1954) 54 Colum.L.Rev. 219, 234.)

For all of these reasons, section 1111 expresses a legislative determination that the testimony of an accomplice is "inherently suspect." (*People*

v. *Bowley* (1963) 59 Cal.2d 855, 862 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178].) But in enacting that section, the Legislature went beyond mere suspicion of accomplice testimony. It expressed a more profound and sweeping judgment, "such testimony has been legislatively determined *never* to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*People* v. *Tewksbury, supra,* 15 Cal.3d at p. 967, italics added; see also *People* v. *Reingold* (1948) 87 Cal.App.2d 382, 409-410 [197 P.2d 175].)

Since a minor's guilt of a criminal offense must be established beyond a reasonable doubt in juvenile court, the same legislative intent expressed in section 1111 applies equally to juvenile proceedings. (See *In re R. C., supra,* 39 Cal.App.3d at pp. 894-895.)

## II

Not only are the legislative purposes and policies embodied in section 1111 equally applicable to juvenile court, but it is clear that the Legislature specifically considered the issue and intended that the accomplice-corroboration rule apply to juvenile court adjudications involving allegations of criminal misconduct.

California's present statutory scheme for the juvenile courts (Welf. & Inst. Code, §§ 200-945) can be directly traced to the Legislature's overhaul of the Juvenile Court Law in 1961. (Stats. 1961, ch. 1616, p. 3459 et seq.) In enacting the 1961 revisions, the Legislature substantially relied upon the recommendations, comments, and proposals of the Governor's Special Study Commission on Juvenile Justice.[5] This court has repeatedly held that the commission's reports are "persuasive evidence of the intent of the Legislature" (*Brian W.* v. *Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788]) and "should be given significant weight in determining the intent of the Legislature." (*People* v. *Superior Court (Carl W.)* (1975) 15 Cal.3d 271, 277 [124 Cal.Rptr. 47, 539 P.2d 807]; see also *In re Robin M.* (1978) 21 Cal.3d 337, 342 [146 Cal.Rptr. 352, 579 P.2d 1]; *T.N.G.* v. *Superior Court* (1971) 4 Cal.3d 767, 776, fn. 10 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re William M.* (1970) 3 Cal.3d 16, 21, fn. 5 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Gladys R.* (1970) 1 Cal.3d 855, 867 [83 Cal.Rptr. 671, 464 P.2d 127].)

---

[5] The two parts of the commission's final report are: Report of the Governor's Special Study Commission on Juvenile Justice, Part I—Recommendations for Changes in California's Juvenile Court Law (1960) (hereinafter, Com. Rep., pt. I); and Report of the Governor's Special Study Commission on Juvenile Justice, Part II—A Study of the Administration of Juvenile Justice in California (1960) (hereinafter, Com. Rep., pt. II).

The commission found that one of the "major problems" of juvenile justice in California was that "[b]asic legal rights are neither being uniformly nor adequately protected under present juvenile court provisions and procedures." (Com. Rep., pt. I, at p. 12.) "The paradox of juvenile courts . . . is that while they are designed to insure a superior justice through protection of the child, they have, to an excessive extent, abandoned the fundamental judicial protections upon which the traditional methods of promoting justice are based." (Com. Rep., pt. II, at p. 4.) The commission conducted interviews with a sample of juvenile court judges around the state and found, inter alia, that less than half of them applied the accomplice-corroboration rule in proceedings before them. (*Id.,* at p. 10.)

In view of the "pronounced absence of uniformity of court procedures," the commission proposed in its Recommendation No. 11 that the "juvenile court law should set forth minimum procedural rules as outlined in the comments accompanying this recommendation." (Com. Rep., pt. I, at p. 29.) Those comments specifically referred to the accomplice-corroboration rule and recommended that "*accomplice testimony should be surrounded with the usual safeguards . . . .*"[6] (*Id.,* at p. 30, italics added.) The commission explained that "[a]ll of the reasons for employing rules of evidence in other judicial proceedings, e.g., to insure truthful, reliable, and fair testimony, *apply with equal force* to a hearing on a minor's delinquency . . . ." (*Ibid.,* italics added.)

The conclusion that the accomplice-corroboration rule is applicable to juvenile court proceedings is strongly supported by this court's decision in *People* v. *Superior Court (Carl W.), supra,* 15 Cal.3d 271. There, this court held that the Legislature, in acting upon the commission's Recommendation No. 11, decided to provide *more* protection for the minor at contested jurisdictional hearings than did the commission. The court held that by adding certain language to Welfare and Institutions Code section 680,[7] "the Legislature . . . clearly indicated that more formality should be observed when there was a contested factual or legal issue" than the commission had proposed. (15 Cal.3d at p. 278.) Clearly, the Legislature had no intention to do away with the commission's recommendation on

[6]In addition to the protection of the accomplice-corroboration rule, an accused in a criminal trial is entitled to have the jury instructed that the testimony of an accomplice witness is to be viewed with distrust. (CALJIC No. 3.18; *People* v. *Gordon, supra,* 10 Cal.3d at p. 466, fn. 3.) Since the commission did not give juveniles the right to a jury trial, no such instruction could have been intended as being among the "usual safeguards" surrounding accomplice testimony. Therefore, Recommendation No. 11 must have referred to the accomplice-corroboration rule.

[7]Welfare and Institutions Code section 680 was one of the sections based upon Recommendation No. 11. (Com. Rep., pt. I, at p. 30.) As enacted by the Legislature in

accomplice-corroboration in favor of less formality or fewer rights, as suggested by the majority opinion. (*Ante,* at pp. 952-953.)

The majority contend nevertheless that the accomplice-corroboration rule could not have been intended to apply in juvenile court because Penal Code section 1111 applies only to a "conviction," whereas Welfare and Institutions Code section 203 (former § 503; adapted from former § 736) provides that "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose . . . ." Apparently, it is argued that by enacting the quoted language of section 203, the Legislature intended to remove the accomplice-corroboration rule from juvenile court. This argument cannot withstand analysis.

The earliest version of the language relied upon by the majority was enacted by the Legislature in 1937 as former Welfare and Institutions Code section 736.[8] (Stats. 1937, ch. 369, § 736, p. 1037.) That language was *not* added as part of a legislative bill which was aimed at the accomplice-corroboration rule. Rather, it was enacted as a part of the initial codification of the entire Welfare and Institutions Code. (Stats. 1937, ch. 369, p. 1005 et seq.) The obvious purpose of this language was to protect juveniles as much as possible from the stigma and the adverse consequences which society attaches to criminal convictions in adult court. (See *T.N.G.* v. *Superior Court, supra,* 4 Cal.3d at pp. 775-776; see also *id.,* at p. 776, fn. 10.) Its enactment—and the enactment of its successor statutes (§§ 503 and 203)—had nothing to do with the accomplice-corroboration rule. They were intended to give *added* protection to minors, not take protection away.

Whatever doubts there may have been concerning the purpose of the language upon which the majority rely, those doubts were resolved

---

1961, section 680 provided in part: "*Except where there is a contested issue of fact or law,* the proceedings shall be conducted in an informal nonadversary atmosphere with a view to obtaining the maximum co-operation of the minor upon whose behalf the petition is brought and all persons interested in his welfare with such provisions as the court may make for the disposition and care of such minor." (Stats. 1961, ch. 1616, § 2, p. 3481.) The italicized portion of the quoted sentence was added by the Legislature to the language proposed by the commission. The balance of section 680 was enacted precisely as proposed by the commission. Section 680 has not been amended since its passage in 1961.

[8]Former section 736 provided: "An order adjudging a person to be a ward of the juvenile court shall not be deemed to be a conviction of crime."

against their interpretation during the 1961 overhaul of Juvenile Court Law. At that time, the Juvenile Justice Commission took former section 736, reworded and expanded it, and recommended its enactment as section 503 (now § 203).[9] Section 503 was enacted exactly as proposed. Thus, the precise language relied on by the majority opinion was recommended by the same commission which concurrently recommended that "accomplice testimony should be surrounded by the usual safeguards . . . ." (Compare Com. Rep., pt. I, at p. 29 with Com. Rep., pt. I, at p. 52.) It defies reason to conclude that the commission wished to undo in one section what it affirmatively proposed elsewhere. The majority simply ignore this paradox to which their interpretation leads.

Further, the majority's reasoning flies in the face of this court's admonition "to look to the consequences of the proceedings rather than the formal labels to determine what rights are appropriately applied to juvenile proceedings." (*In re Gladys R., supra,* 1 Cal.3d at p. 866, fn. 21; see also Note (1974) 14 Santa Clara Law. 881, 883-884.) The "wooden approach"[10] adopted by the majority has been repeatedly rejected, regardless of whether the rights involved are of constitutional origin (see, e.g., *In re Gault, supra,* 387 U.S. at pp. 49-50 [18 L.Ed.2d at pp. 558-559]; *People* v. *Olivas* (1976) 17 Cal.3d 236, 244 [131 Cal.Rptr. 55, 551 P.2d 375]) or are based on statute (*In re Gladys R.,* [11] *supra,* 1 Cal.3d at p. 866, fn. 21). "[I]n terms of potential consequences, there is little to distinguish an adjudicatory hearing [in California's juvenile court system] from a traditional criminal prosecution." (*Breed* v. *Jones* (1975) 421 U.S. 519, 530 [44 L.Ed.2d 346, 356, 95 S.Ct. 1779].) Clearly, the majority's statutory argument lacks merit.

## III

The majority opinion's analysis of the denial of equal protection of the law is also erroneous. "The concept of the equal protection of the laws

[9]Section 503 (now § 203) provides in full: "An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." The underlined words denote the changes made in 1961 in the wording of former section 736.

[10]*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 541 [29 L.Ed.2d 647, 658, 91 S.Ct. 1976].

[11]The issue in *In re Gladys R.* was whether a 12-year-old girl, who was accused of a Penal Code violation in juvenile court, could avail herself of a defense provided in Penal Code section 26, subdivision One (i.e., that a child under the age of 14 years does not commit a crime in the absence of clear proof she "knew its wrongfulness"). The issue arose because section 26 was applicable on its face only to "crimes" and had not been affirmatively incorporated into the Juvenile Court Law. Nevertheless, the court concluded Penal Code section 26 did apply to juvenile court. (1 Cal.3d at pp. 862-867.)

compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) That heretofore settled proposition should dispose of the present appeal, since the purposes and policies underlying the accomplice-corroboration rule apply equally to adults and juveniles accused of criminal misbehavior. (Cf., dis. opn., *ante,* part I; *In re R. C., supra,* 39 Cal.App.3d at pp. 894-895.)

In this case, equal protection does not involve differences in the formalities of *how* a court goes about determining whether an individual has committed criminal misconduct. (See, e.g., *McKeiver* v. *Pennsylvania, supra,* 403 U.S. at p. 551 [29 L.Ed.2d at p. 664].) Rather, it concerns *whether* a minor may be convicted of an offense at all, when, as a matter of law, an adult—on trial for the identical offense on the basis of identical evidence—*cannot* be found guilty.[12] It is established that "[t]he same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." (*In re Winship, supra,* 397 U.S. at p. 365 [25 L.Ed.2d at p. 376].) Therefore, the Supreme Court has held that a minor may not constitutionally be subjected to "the stigma of a finding that he violated a criminal law and to the possibility of institutional confinement on proof insufficient to convict him were he an adult." (*Id.,* at p. 367 [25 L.Ed.2d at p. 377], fn. omitted.) These principles control here.

The majority offer several rationales in an attempt to justify a contrary result. None has merit.[13] For example, the majority "assume" that a judge is a more competent trier of fact than a jury and thus will be "more critical of accomplice testimony" than a jury. (Maj. opn., *ante,* at p. 951.) Yet, just three years ago this court "hasten[ed] to express our doubts" about the validity of such a startling assumption. (*People* v. *Superior*

---

[12]Thus, the constitutional issue in this case is not—and the minor does not argue—whether "all rules of evidence in criminal proceedings must extend to juvenile court proceedings." (Maj. opn., *ante,* at p. 950.) Rather, the minor contends that he may not be subjected to a finding that he committed a criminal offense "on proof that would be insufficient to convict him if he were an adult."

This issue is highlighted by the following hypothetical. John (age 18) and Jim (age 17) are charged with having committed a crime. The only evidence that they were involved is the uncorroborated testimony of a witness that both boys committed the offense with him. Even though the evidence is identical as to each boy, John may not be convicted, but Jim, because he is a minor, may.

[13]The majority apply the rational basis test, rather than a strict scrutiny analysis, to the minor's equal protection claim. Such a choice is dubious at best. (See, e.g., *People* v. *Olivas, supra,* 17 Cal.3d at p. 251.)

*Court (Carl W.), supra,* 15 Cal.3d at p. 280.) In suddenly reversing itself, the majority has today attempted to deny a basic premise of our constitutional forefathers. (Cf., Cal. Const., art. I, § 16; U.S. Const., 6th Amend.; *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444].) It has also flatly overruled the Legislature, which applied the accomplice-corroboration rule of section 1111 both to jury trials *and* to court trials—a fact which shows a legislative determination that judges are *not* more capable of evaluating accomplice testimony than are jurors. Thus, the majority have relied upon a justification for a legislative distinction that is directly contradicted by the evidence of legislative intent. The rational basis test of equal protection analysis requires that disparate treatment be justified by "a purpose [that] can *realistically* be ascribed to the Legislature." (*Cooper* v. *Bray* (1978) 21 Cal.3d 841, 854 [148 Cal.Rptr. 148, 582 P.2d 604], italics added.) Today's decision fails to meet that requirement.

It is further asserted that a minor may be found to have committed a crime on evidence statutorily inadequate to convict an adult due to the state's need to intervene "in the interest of rehabilitating an impressionable minor . . . ." (Maj. opn., *ante,* at p. 952.) The majority do not elaborate. Both this court and the United States Supreme Court have on numerous occasions expressed grave doubts whether minors actually receive the benefits of any special rehabilitation or treatment. For this reason, the courts have required that such a justification allowing differences between the juvenile and adult court must be more elaborate than "mere verbiage" and "more persuasive than cliché can provide." (*In re Gault, supra,* 387 U.S. at pp. 29-30 [18 L.Ed.2d at p. 547].) Courts must "look to the consequences of the proceedings rather than the formal labels to determine what rights are appropriately applied to juvenile proceedings." (*In re Gladys R., supra,* 1 Cal.3d at p. 866, fn. 21.)

Only three years ago the Supreme Court "candidly appraised" California's juvenile system and found "no persuasive distinction" between a section 602 proceeding and a criminal prosecution. (*Breed* v. *Jones, supra,* 421 U.S. at pp. 529, 531 [44 L.Ed.2d at pp. 355-357].) "[I]n terms of potential consequences, there is little to distinguish an adjudicatory hearing such as [is held in California juvenile courts] from a traditional criminal prosecution." (*Id.,* at p. 530 [44 L.Ed.2d at p. 356].) Nothing has occurred in the intervening months to alter the conclusion of the Supreme Court.[14]

---

[14]On the contrary, juvenile proceedings involving allegations of law violations have become more akin to traditional criminal proceedings since *Breed* v. *Jones* was decided in

The majority also rely heavily upon *McKeiver* v. *Pennsylvania, supra,* 403 U.S. 528, in which the Supreme Court held that minors do not have a federal due process right to a jury trial at a jurisdictional-type hearing in juvenile court. There, the Supreme Court noted that its earlier *Gault* and *Winship* decisions had placed "an emphasis on factfinding procedures." (403 U.S. at p. 543 [29 L.Ed. at p. 659].) A jury trial was not a due process requirement in juvenile court, the court reasoned, because "one cannot say that in our legal system the jury is a *necessary component of accurate factfinding.*" (*Ibid.,* italics added.) The court also stated a jury trial right "would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial." (*Id.,* at p. 550 [29 L.Ed.2d at p. 663].)

From the holding in *McKeiver,* the majority conclude there can be no constitutional compulsion for an accomplice-corroboration rule in juvenile court. (Maj. opn., *ante,* at p. 952-953.) However, the majority have significantly misinterpreted *McKeiver.* At the threshold, the majority appear to believe that *McKeiver* was partly decided as an "equal protection issue." (Maj. opn., *ante,* p. 952.) In fact, *McKeiver* was based only on the "narrow but precise" due process issue. (403 U.S. at p. 530 [25 L.Ed.2d at p. 652].) Thus, while *McKeiver* might at most have disposed of appellant's federal due process claim, the equal protection problem was never resolved.

In the context of an equal protection analysis premised on the rational basis test, the inquiry is twofold: (1) can the reason that is offered to support the disparate treatment (e.g., of juveniles with respect to the accomplice-corroboration rule) "realistically be ascribed to the Legislature"; and, if so, (2) is the disparate treatment "rationally related to [that] legislative purpose?" (*Cooper* v. *Bray, supra,* 21 Cal.3d at pp. 854, 855.) Viewed from this perspective, *McKeiver* offers the majority no comfort.

Most of the reasons relied upon in *McKeiver*—including the most critical one—cannot realistically be ascribed to the Legislature when it

---

1975. Now, for example, "the prosecuting attorney shall appear on behalf of the people of the State of California" in section 602 hearings. (Welf. & Inst. Code, § 681, subd. (a).) Moreover, the purposes of the Juvenile Court Law have been expanded to include the protection of the public from "criminal conduct by minors" and the imposition on the minor of "a sense of responsibility for his own acts." (Welf. & Inst. Code, § 202, subd. (a).)

The time is drawing inevitably closer when this court must confront, in light of the developing changes in the functions of the juvenile court system, whether the immunity of that system from all of the protections of the criminal courts can withstand constitutional scrutiny.

(allegedly) refused to apply the accomplice-corroboration rule to the juvenile court. The key factor in *McKeiver* was the accuracy of the factfinding process. The Legislature clearly believed that the accomplice-corroboration rule *was* a "necessary component of accurate factfinding." As has been previously noted, that rule involves a legislative determination that accomplice testimony is "never . . . sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*People v. Tewksbury, supra,* 15 Cal.3d at p. 967.) Moreover, the Legislature was *not* concerned that the accomplice-corroboration rule would add undue "formality" and "clamor" to contested jurisdictional hearings, since it "clearly indicated that more formality should be observed when there was a contested factual or legal issue" at the hearing. (*People v. Superior Court (Carl W.), supra,* 15 Cal.3d at p. 278.)

As to the remaining reasons offered in *McKeiver* for not having jury trials in juvenile court—i.e., delay and a public trial—neither are in any way involved by incorporation of the accomplice-corroboration rule. None of the concerns are rationally advanced by refusing to apply the accomplice-corroboration rule in juvenile court. Therefore, *McKeiver* fails to support the position of the majority.

## IV

The legislative history of our Juvenile Court Law makes clear that the accomplice-corroboration rule was intended to apply to juvenile court. In view of what the majority concede is the "difficult constitutional issue" presented by this case (*ante,* at p. 949), I find it extraordinary they choose to pay so little attention to that history.

Further, it should violate our most fundamental notions of equality that one person may be found to have committed criminal misconduct and be subject to a potentially lengthy term at an undeniably penal institution operated by the California Youth Authority, while another person accused of the same crime on the same evidence *must* be acquitted. The former, a minor who is assertedly the recipient of specialized treatment, is in reality the recipient of specialized punishment. I cannot agree that our Constitutions require this court to stand idly by and ignore this basic inequity.

Newman, J., concurred.