[Crim. No. 35619. Second Dist., Div. Two. Oct. 10, 1980.]

In re CANDIDO B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CANDIDO B., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ernest Martinez, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, William R. Pounders, John R. Gorey and Ronald N. Ito, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEACH, J.**—Candido B., a minor, appeals from the order declaring him a ward of the court (Welf. & Inst. Code, § 602) by reason of his having possessed phencyclidine. (Health & Saf. Code, § 11377, subd. (a)). He contends, in essence, that (1) he was improperly denied a jury trial, (2) the evidence was insufficient to sustain the court's finding, and (3) he was improperly denied the right to present evidence in his defense. We reverse.

The evidence in support of the present petition indicated that at approximately 1:25 a.m. on April 15, 1979, Los Angeles Police Officers Frank Goldberg and his partner directed the beam of their unmarked unit's headlights onto appellant and two other youths who were standing near an "older person" who was seated on a brick fence. Officer Goldberg testified he was able to see appellant and another youth each discard one of the phencyclidine cigarettes that were later found on the ground.[1] However, in a search of their persons following their arrests, only the "older person," identified as Raul Allaniz, was found to possess contraband, i.e., "a foil bindle containing a brownish green plant material which [was also] analyzed as PCP."

■ Contrary to appellant's assertion on appeal, the foregoing evidence, if credited, was sufficient to permit a rational fact finder to properly conclude beyond a reasonable doubt that appellant had unlawfully possessed a usable amount of phencyclidine. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738].) His contention that he was constitutionally entitled to a trial by jury has been consistently rejected by our highest court. (See *In re Mitchell P.* (1978) 22 Cal.3d 946, 951 [151 Cal.Rptr. 330, 587 P.2d 1144].) ■ His third contention, however, is meritorious and requires that we reverse the present order to permit further proceedings.

---

[1] The cigarette appellant allegedly discarded apparently had never been lit or partially consumed.

It was appellant's theory of defense that the contraband found on the ground had been discarded by one or more of the others and, apparently, that Raul Allaniz had promptly so acknowledged following his arrest. The trial court, however, refused to allow appellant to inquire of Officer Goldberg regarding Allaniz' statements. In fact, it even refused to permit appellant to make the offer of proof that is necessarily prerequisite to the court's duty to determine the preliminary foundational facts. (See Evid. Code, § 405.)[2]

Since the court refused to hear what the alleged statements were, it, of course, had no basis for determining their potential reliability, relevancy, or possible admissibility. Moreover, when it was pointed out that the statements could qualify as an exception to the hearsay rule because they were contrary to the penal interest of the declarant (Evid. Code, § 1230), the court refused to allow the public defender who represented appellant an opportunity to bring in his investigator to make the necessary showing of nonavailability of the declarant simply because counsel had, at least in part, announced "ready" in another department.

In recent years we have watched with some sadness the needs of our troubled society, and its even more troubled youth, become enveloped in the technicalities and formalities that enshroud our criminal courts. However one may regard the merits of the adversary system as a judicial concept, it is disheartening to see either side, and particularly the "prosecution" object, even on theoretically meritorious grounds, to the introduction of any evidentiary item during that "informal" search for truth that formerly was regarded as the aim of our juvenile system. If, in a nonjury trial, the receipt of a bit of hearsay would actually cause a court to doubt it was necessary to take a youth from his parents and declare him a ward, then one might expect both the People and the court to insist on such evidence being heard. On the other hand, if its value was so trivial as to engender no reasonable doubt, then its receipt without preliminary extensive, expensive and time-consuming formalities could do no harm.

In any event, if we must have spirited "contests," rather than truth-seeking hearings to which each side seeks to contribute, then those who preside over such struggles must, at least, (1) hear all required founda-

---

[2]See appendix attached hereto.

tional facts prior to making a ruling on the admissibility of evidence, and (2) allow sufficient time to permit such a showing to be made.

The order under review is reversed and the matter is remanded for further proceedings not inconsistent with this decision.

Fleming, Acting P. J., and Compton, J., concurred.

A petition for a rehearing was denied November 6, 1980, and respondent's petition for a hearing by the Supreme Court was denied December 17, 1980.

### APPENDIX

Q. [By Defense Counsel, Mr. Redman] Were there any statements by any of the individuals?

A. [Officer Goldberg] Yes.

Q. Were there any statements by the minor here in court?

A. No.

Q. Were there any statements by any of the individuals?

A. Yes.

Q. Which individual?

A. I don't recall which subject did speak with me, but one of them did provide some statements.

Q. You don't remember which one it was?

A. No, I can't recall his name right now.

Q. Was it Raul Allaniz, A-l-l-a-n-i-z?

A. It may be. If I could look at the report, I could determine which subject made a statement to me.

Q. Was one of these—did one of the subjects appear older than the others?

A. Yes.

Q. Do you remember was that the one who made a statement?

A. Yes.

Q. What was that person's statement?

A. He—

MR. FELKER: [Deputy District Attorney] I don't understand the relevancy of this, Your Honor.

THE COURT: It's hearsay, for one thing..How do you intend to get this in?

MR. REDMAN: Well, Your Honor, I would argue that this would be a declaration against interest.

THE COURT: Whose interest?

MR. FELKER: It's irrelevant to this boy here.

THE COURT: That's why I inquired whose interest.

MR. REDMAN: By offer of proof—by way of offer of proof, the statement appears to have been that this other individual—

MR. FELKER: Well now, I'm going to object to getting into the statement, Your Honor. It's hearsay.

THE COURT: He's making an offer here.

MR. FELKER: But the offer is the statement itself.

THE COURT: Well, I guess he is getting close to that, isn't he? All right.

MR. REDMAN: Well, obviously if I say it, it's not evidence.

MR. FELKER: Yes, Your Honor. But when you say something to somebody, they don't just block it out of their minds, and I don't even know what the statement is, but that is a tactic that I am not in favor of, let me say that. I don't think it's fair.

THE COURT: Let's find out the rationale for even trying to proceed down this road. I don't understand.

MR. REDMAN: The statement is in the arrest reports. It's in the police reports, so the District Attorney should be aware of it.

THE COURT: Why are you trying to get the statements before the court?

MR. REDMAN: Your Honor, they go to the very heart of the charge.

THE COURT: Well, I don't understand how they do at this point. The officer testifies that he sees this minor discard something which turns out to be item 2 in People's 1 for identification. Now, do you have something or somebody that's going to say no, he did not discard it?

MR. REDMAN: Well, we're defending against the allegations, Your Honor.

THE COURT: Let's do that. I don't understand why we keep going into these—

MR. REDMAN: I can only do that by way of my own witnesses, but I can indicate—

THE COURT: How can a statement by somebody else who was arrested at the scene have anything to do with whether or not this officer saw this minor discard something or not? Either he saw it or he didn't.

MR. REDMAN: Because there's room for impeachment of an officer.

THE COURT: Through a statement made to an officer you are attempting to impeach?

MR. REDMAN: No. Rules to impeach officer observations.

THE COURT: Through a statement made to this officer?

MR. REDMAN: Regarding an officer's observations of what he saw.

THE COURT: No, I am not going to allow, though. We better move on.

MR. REDMAN: Your Honor, I can make an offer of proof there are statements in the arrest reports by—

THE COURT: There very well may be, but I don't understand what exception of the hearsay rule you intend to get them in.

MR. REDMAN: We would argue this would be a declaration against interest.

MR. FELKER: Your Honor, the statement—if we are going to fight about the statements, they don't represent—I don't believe they help—

THE COURT: Well, I don't want to know about the statements period. They are not coming in, so let's move on to some other thing.

MR. REDMAN: Well, I'd like to make a record, if possible.

THE COURT: You've made your record.

MR. REDMAN: I don't think I have. I want to clarify what I'm trying to do.

THE COURT: Clarify it.

MR. REDMAN: All right. There is room, we would contend there is room to impeach the officer's observations of what he saw as to who discarded what.

THE COURT: Fine.

MR. REDMAN: We would make an offer of proof that there are statements which appear in the arrest report which we would argue which would be declarations against interest. These were statements by one of the other arrestees, and these statements go to the heart of our defense. So we would ask that we be allowed to bring these statements into evidence.

MR. FELKER: Your Honor, I also believe that they would be hearsay, and under Section 1231 of the Evidence Code, declarations against penal interest, the proper foundation has not been laid to introduce those statements.

THE COURT: That's right.

MR. REDMAN: That's one reason I would—I can indicate that I would like the chance to lay a foundation. It may require bringing in an investigator—one of my investigators in.

THE COURT: But you announced ready in this matter in 201.

MR. REDMAN: Well, I announced ready with the possible need for bifurcation.

THE COURT: Yes. But then that determination is either made in 201 or it's not made at all.

MR. REDMAN: Well, it wasn't made in 201.

THE COURT: Well, then it looks like we are past that then. With regard to any of the statements, I find that they are irrelevant, so let's proceed.

MR. FELKER: Your Honor, if this is going to be bifur—

THE COURT: Just a minute, Mr. Felker. You've clarified it for the Court, and I've made my ruling, so let's move on.