[No. F005265. Fifth Dist. Sept. 26, 1985.]

In re E.L.B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
E.L.B., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Part II.

## COUNSEL

Judith K. Kent and Dallas Sacher, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANSON (P. D.), J.**—E.L.B., a minor, was found by the juvenile court to have burglarized the home of Paul Pankradz (Pen. Code, § 459). The minor was placed in C. K. Wakefield School, a local reformatory, for 18 months and ordered to pay restitution. Upon completion of the stay in Wakefield, E.L.B. was to be placed in a suitable group home.

### I

### FACTS

Paul Pankradz was at his place of business, Gramp's Appliances, when R.L.C. came by to ask about his friend, Pankradz' grandson, Lucas, who lived with his grandparents. Pankradz informed R.L.C. that Lucas was out of town for the weekend.

R.L.C. testified he left the store and went into the alley behind the store where appellant and his brother A.B. were waiting. R.L.C. informed the two that Lucas was not home; the three boys decided to go to the Pankradz house. When asked what they intended to do once they reached the house, R.L.C. replied, "Just to get into it," and "I guess take some stuff."

When they arrived they knocked on the door. When no one answered, the boys went around the house to the alley and jumped the fence. Once they were inside the fenced area, they entered the house. (The door usually was unlocked.) R.L.C. testified that while in the house he took a phone and some silverware. Although he was not sure, he thought both appellant and A.B. also took items of property. However, he could not remember if either

brother took anything when he left the house. R.L.C. did state that no one had a shotgun or any other large item when each left.

Verlo Jackie Whiteside lived across the street from the Pankradz house. On this same morning, Whiteside was sitting in her house having coffee when she noticed "two black boys and one white boy" stop in her yard. At the hearing, Whiteside identified appellant and his brother A.B. as the two black boys. She saw them cross the street and walk around the fence to the alley behind the house. She then saw figures walking through a breezeway between the house and garage. Approximately 15 minutes later, she saw the "big boy's head" from behind a dumpster in the alley (A.B. was the larger brother). She did not see the other two boys at this time.

Whiteside, soon after the incident, was unable to identify appellant as one of the boys. Pankradz' wife, Grace, took appellant to Whiteside's house and asked her if appellant were one of the boys she saw that day. Whiteside was unable to identify him definitely.

According to Pankradz, among the items taken from the house were a 12-gauge shotgun, a .22 caliber Ruger pistol, a radio, silverware, and a camera.

### DISCUSSION

### II*

*Appellant's Request for a New Attorney*

. . . . . . . . . . . . . . . . . . . . . . . . .

### III

*Penal Code Section 1111*[2]

The only evidence directly connecting appellant to the burglary of the Pankradz house is the testimony of R.L.C.—an accomplice. In the adult criminal court, under section 1111, a conviction cannot be based upon the testimony of an accomplice unless that testimony is corroborated by other evidence. (§ 1111.) However, in *In re Mitchell P.* (1978) 22 Cal.3d 946, 949 [151 Cal.Rptr. 330, 587 P.2d 1144], the California Supreme Court held

---

*See footnote, *ante,* page 780.

[2]All statutory references are to the Penal Code unless otherwise indicated.

that a finding of wardship pursuant to Welfare and Institutions Code section 602 does not constitute a conviction within the meaning of section 1111. As a result, mandatory application of section 1111 in juvenile proceedings is not required. (*Id.*, at pp. 952-953.)

Appellant concedes the *Mitchell* case is directly on point and controlling, and this court is bound by its holding. (See *County of Butte* v. *Superior Court* (1960) 178 Cal.App.2d 310, 311 [2 Cal.Rptr. 913].) Appellant notes, however, that changes in case law and in legislation have occurred since the *Mitchell* opinion was published and therefore urges the *Mitchell* holding should be reevaluated.

In *Mitchell*, the majority confronted the critical question whether the underlying purpose of the accomplice corroboration rule permitted different treatment of those persons charged with crimes from the treatment of persons charged with juvenile offenses. The court recognized that accomplice testimony generally is suspect. (*In re Mitchell P., supra*, 22 Cal.3d at p. 951.) However, under the circumstances, the court considered the problem to be not difficult: "[W]hen a judge rather than a jury is trier of fact it is not unreasonable to assume he is more critical of accomplice testimony and more likely to accord it appropriate weight. Although juries are generally required upon demand by defendant in a criminal proceeding, the state is not constitutionally compelled to provide a jury in juvenile proceedings [citation] . . . . It thus follows there is less reason for application of the arbitrary accomplice corroboration rule in juvenile court proceedings." (*Id.*, at pp. 951-952.) The *Mitchell* court also indicated that by making distinctions between criminal and juvenile proceedings, the Legislature considered the possible opportunity to rehabilitate a minor outweighed policy arguments supporting the exclusion of evidence not otherwise constitutionally proscribed. (*Id.*, at p. 952.)

The Chief Justice dissented, noting the majority ignored that the Legislature, in enacting section 1111, "went beyond mere suspicion of accomplice testimony. It expressed a more profound and sweeping judgment, 'such testimony has been legislatively determined never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated.'" (22 Cal.3d at p. 956.) The dissent further stated that because a minor's guilt had to be established beyond a reasonable doubt in the juvenile court, the legislative concerns underlying section 1111 applied equally to juvenile proceedings.

The dissent also discussed that the purpose of the juvenile proceeding was to provide protection for the minor from the stigma and consequences society attaches to criminal convictions. However, by not applying the accom-

plice corroboration rule in juvenile proceedings, the dissent reasoned the majority actually was taking away protection; that the court should look to the consequences of its acts rather than to labels assigned "criminal" or "ward of the court." (22 Cal.3d at p. 959.) Finally, the Chief Justice noted that neither the courts nor the Legislature distinguished between section 1111's application in a jury trial versus a court trial, and that the United States Supreme Court found "'no persuasive distinction'" between a Welfare and Institutions Code section 602 proceeding and a criminal prosecution. (*Id.*, at p. 961; see *Breed* v. *Jones* (1975) 421 U.S. 519, 531 [44 L.Ed.2d 346, 356, 95 S.Ct. 1779, 1786].)

Numerous legislative changes in the laws governing juveniles and juvenile proceedings (changes in Welf. & Inst. Code, §§ 202, 602, 650, subd. (b), 676, subd. (18)) have occurred since the filing of the *Mitchell* opinion. These changes involve the addition of language expressly recognizing the need to protect the public from the criminal conduct of minors (Welf. & Inst. Code, § 202), the requirement that a prosecuting attorney initiate the petition against the minor (Welf. & Inst. Code, §§ 602, 650, subd. (b)), and the opening of certain juvenile proceedings to the public when the proceeding involves a violent or serious offense (Welf. & Inst. Code, § 676).

Numerous other developments in recent years have made juvenile proceedings much less informal and more similar to adult criminal proceedings. The same rules of evidence and pretrial discovery apply (Welf. & Inst. Code, § 701); juveniles may seek to suppress illegally obtained evidence in a section 1538.5-type pretrial hearing (Welf. & Inst. Code, § 700.1); juveniles must be read their *Miranda* rights (*In re Michael M.* (1970) 11 Cal.App.3d 741, 743 [96 Cal.Rptr. 887]); they must be notified of their right to appeal (*In re Arthur N.* (1974) 36 Cal.App.3d 935, 940-941 [112 Cal.Rptr. 89]). (See *In re Javier A.* (1984) 159 Cal.App.3d 913, 959-962 [206 Cal.Rptr. 386].) We all must admit the present juvenile adjudication hearing is a far cry from former closed proceedings where a judge was briefed of the charges, and proceeded to question the parents and child in a personal and casual fashion. The accomplice corroboration rule would add little to any stigma attached to the complicated network of juvenile proceedings. On the contrary, application of the rule would offer more protection by ensuring that each proceeding affords fairness to the juvenile.

Various commentators and courts have discussed the narrowing gap between criminal and juvenile courts. The United States Supreme Court noted the trend in *Breed* v. *Jones, supra,* 421 U.S. 519, 528-530 [44 L.Ed.2d 346, 355-356]: "Although the juvenile-court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by antisocial conduct, our deci-

sions in recent years have recognized that there is a gap between the originally benign conception of the system and its realities. With the exception of *McKeiver* v. *Pennsylvania* 403 U.S. 528 (1971), the Court's response to that perception has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions. . . .

". . . For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew 'the "civil" label-of-convenience which has been attached to juvenile proceedings,'
. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"[F]or purposes of the right to counsel, a 'proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.'
. . .

"Thus, in terms of potential consequences, there is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution."

Although the federal courts do not require corroboration of accomplice testimony in any federal prosecution (*In re R.C.* (1974) 39 Cal.App.3d 887, 893 [114 Cal.Rptr. 735]), a number of state courts have applied the accomplice corroboration rule in juvenile proceedings.

The Iowa Supreme Court recently stated that although juvenile hearings did not have to conform with all aspects of a criminal proceeding, the essentials of due process and fair treatment must be met. (*In Interest of Dugan* (Iowa 1983) 334 N.W.2d 300, 304.) The court concluded the accomplice corroboration rule applied in juvenile proceedings, noting that the conclusion was consistent with decisions in other states finding corroboration necessary to ensure that the essentials of due process and fair treatment are met in juvenile proceedings.

A Court of Appeals in Georgia held a juvenile was entitled to the use of various principles which had been developed through the common law and which were necessary to obtain a fair trial. (*T.L.T.* v. *State* (1975) 133 Ga.App. 895 [212 S.E.2d 650, 654].) The court found the accomplice corroboration rule to be one of these principles.

Other state courts have not based their decisions explicitly on due process or fairness. The Supreme Court of Nevada held that the accomplice corrob-

oration rule must be applied in juvenile proceedings because an adjudication of delinquency can be based only upon competent, material, relevant and probative evidence. (———, *a Minor* v. *Juvenile Dept. Fourth Jud. Dist.* (1980) 96 Nev. 485 [611 P.2d 624, 625]; ———, *a Minor* v. *Juvenile Dept. Fourth Jud. Dist.* (1980) 96 Nev. 332 [608 P.2d 509, 510] [the court stated that application of the rule is consistent with the United States Supreme Court case of *Breed* v. *Jones, supra,* 421 U.S. 519].)

An Oklahoma appellate court recognized no constitutional requirement for the rule but found that as a matter of policy, application of the rule was necessary to preserve the integrity of the evidence in the proceeding. (*Smith* v. *State* (Okla.Crim. 1974) 525 P.2d 1251, 1253.) The Minnesota Supreme Court stated that corroboration is required because it restores confidence in naturally suspect accomplice testimony; it confirms its truth. (*Matter of Welfare of K.A.Z.* (Minn. 1978) 266 N.W.2d 167, 169.)

The interaction of two generally accepted rules presents the problem. First, a minor's guilt of an offense must be established beyond a reasonable doubt. (Welf. & Inst. Code, § 701; *In re Winship* (1970) 397 U.S. 358, 362 [25 L.Ed.2d 368, 374, 90 S.Ct. 1068, 1073-1074].) No one quarrels with that premise. Second, accomplice testimony has been held to be suspect and has been legislatively determined "never to be sufficiently trustworthy to establish guilt beyond a reasonable doubt unless corroborated." (*People* v. *Tewksbury* (1976) 15 Cal.3d 953, 967 [127 Cal.Rptr. 135, 544 P.2d 1335].)[3] A juvenile court judge is permitted under *Mitchell* to find a juvenile guilty of an offense "beyond a reasonable doubt" based solely upon the testimony of a youthful accomplice. The contradictions are obvious.

However, we cite *Mitchell* for the proposition that the accomplice corroboration rule is not applied in California juvenile proceedings; we affirm the judgment.

IV

*The Evidence Is Sufficient to Uphold a Finding
That Appellant Committed Burglary.*

■ Appellant contends that with the uncorroborated testimony of R.L.C., the evidence is insufficient to sustain a finding that appellant committed burglary. ■ We review the whole record in the light most fa-

---

[3]One reason stated in the *Tewksbury* opinion for viewing accomplice testimony with more caution and suspicion is that it is often given in the hope or expectation of leniency or immunity. (*Id.,* at p. 967.) R.L.C. testified he had been told by the district attorney that he would not be prosecuted if he testified.

vorable to the judgment to determine whether it discloses substantial evidence which is reasonable, credible, and of solid value so that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) We do not reweigh the evidence or analyze the factual conflicts. (*Emerick* v. *Raleigh Hills Hospital* (1982) 133 Cal.App.3d 575, 580 [184 Cal.Rptr. 92].) ■ Conflicts in the testimony which are subject to justifiable suspicion do not justify the reversal of a judgment. It is the exclusive province of the trial judge or jury to determine the credibility of witnesses and the truth or falsity of the facts upon which a determination depends. (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)

■ The major evidence supporting the trial court's finding that appellant burglarized is the testimony of R.L.C., the accomplice. The only other evidence involved the testimony of neighbor Whiteside. Whiteside testified she saw "two black boys and one white boy" around the Pankradz house at the time the burglary supposedly took place. Although she did not see these boys actually enter or leave the house, she saw them enter a breezeway between the house and garage; she did not see them come out of the breezeway; she said they left through the alley. At trial, she identified appellant as one of the "black boys." During cross-examination, it was elicited that Whiteside was unable to identify appellant as one of the boys when directly confronted with appellant soon after the incident.

R.L.C. testified to entry of the residence and that he took some items from the house. R.L.C. was unable to remember or state whether either appellant or his brother took any items from the house. He could not remember whether they were carrying anything when they left. When questioned earlier by the police, R.L.C. stated that both brothers had taken items from the house.

The Supreme Court of California has determined that the accomplice corroboration rule does not apply in juvenile proceedings because a finding of wardship does not constitute a "conviction" within the meaning of section 1111. (*In re Mitchell P., supra,* 22 Cal.3d at p. 949.)

The testimony of accomplice R.L.C. directly tied appellant to the burglary. The testimony of Whiteside offers some substantiation of the finding of guilt. Although she never saw the boys enter or leave the house, and she did not see them take any property, her testimony provides a circumstantial chain that the boys acted suspiciously around a house that soon after was burglarized.

Because R.L.C.'s testimony need not be corroborated, we affirm the judgment. (*In re Mitchell P., supra,* at p. 949.)

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 19, 1985.