[Civ. No. 34396. First Dist., Div. Four. Mar. 14, 1975.]

In re D. L., a Person Coming Under the Juvenile Court Law.
A. H. GIOVANETTI, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
D. L., Defendant and Appellant.

[Civ. No. 34397. First Dist., Div. Four. Mar. 14, 1975.]

In re T. R., a Person Coming Under the Juvenile Court Law.
A. H. GIOVANETTI, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
T. R., Defendant and Appellant.

**COUNSEL**

Lawrence R. Horn and Lawrence E. Moll, under appointments by the Court of Appeal, and William W. Kaufmann for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—D.L. and T.R. appeal from orders of the juvenile court determining that they came within the court's jurisdiction as a result of committing voluntary manslaughter (Welf. & Inst. Code, § 602; Pen. Code, § 192, subd. 1).

On June 27, 1973, police discovered the body of juvenile Lupe Torres in a vacant field in Salinas. The victim had been strangled with a belt and his skull had been fractured with a rock. Appellants D.L. and T.R. were taken into custody on the basis of information, given by M.A., that appellants and two other juveniles, R.C. and C.G., had killed the victim following a party on the night of June 22, 1973.

At a joint jurisdictional hearing pursuant to Welfare and Institutions Code section 602, involving appellants, R.C. and C.G., M.A. testified that he, the victim, appellants, and the two other youths went to a vacant field after the party to sniff paint fumes. He testified that appellant T.R. got into a fight with the victim and that appellant D.L. and the two others joined in the fight on T.R.'s side. According to M.A., appellant D.L. pulled on a belt which had been placed around the victim's neck, hit, kicked and stabbed the victim. While M.A. did not see appellant T.R. pull on the belt, he did see him hit and kick the victim and stab him once or twice after R.C. dropped a rock on the victim's head. M.A.'s testimony was corroborated by a statement made to police by a girl who had attended the party. The statement was admitted as a prior inconsistent statement (Evid. Code, § 1235) when at the hearing she denied witnessing the events at the field. In the prior statement she indicated that she had been present at the party and had seen appellants, C.G., R.C. and the victim leave. She stated that she had followed them to the vacant field and then saw them fighting. She also saw someone whom she could not identify place a belt around someone else's neck. At the scene of the crime, police found a knife, an empty spray can, and a sock into which the paint had been sprayed.

Appellant D.L. contends that the court erred in receiving in evidence a drawing made by D.L. while he was at juvenile hall. The drawing was a pencil sketch of a figure wearing a frown, and with tears in its eyes; the figure had a belt around its neck and a dagger protruding from its torso. The figure, labeled "Lupe," had the words "No, No, No, Not the Rock" coming from its mouth. A juvenile hall teacher who saw appellant make the drawing and post it on a bulletin board, took it and turned it over to police. The drawing was admitted in evidence over D.L.'s hearsay objection (Evid. Code, § 1200).[1] While the referee did not indicate the basis for his ruling, it appears that he considered the drawing as coming within the declaration-against-interest exception to the hearsay rule (Evid. Code, § 1230).

On appeal, argument is focused on whether the drawing qualified as a declaration under section 1230; it has apparently been assumed that the drawing was subject to the hearsay rule. The arguments made regarding the applicability of section 1230 fail to take into account that declarations against interest are exceptionally admitted only if made by a nonparty witness and such a witness is "unavailable." ■ Here, the declaration in question was made by D.L. himself, a party to the action, who was not "unavailable" within the meaning of Evidence Code section 240. Section 1230 is therefore inapplicable.

■ The drawing, having been posted publicly by D.L., may reasonably be taken as evidence of an implied statement (Evid. Code, § 225) to prove the truth of its contents; offered for that purpose, the drawing was hearsay subject to Evidence Code section 1200. However, as evidence of a statement offered "against the declarant in an action to which he is a party" it was admissible under Evidence Code section 1220.[2]

Appellant D.L. also contends that his Sixth Amendment[3] right to confront witnesses against him was violated by the admission of an

[1]Evidence Code section 1200:

"(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.

"(b) Except as provided by law, hearsay evidence is inadmissible.

"(c) This section shall be known and may be cited as the hearsay rule."

[2]Evidence Code section 1220: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

[3]United States Constitution, Amendment VI: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State

out-of-court confession made by C.G., despite editing of the confession to remove certain references to him. He relies on *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869], and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]. In *Aranda* the court held, regulating state procedure governing joint trials, that instructions limiting the admissibility of an out-of-court statement made by a defendant implicating a codefendant were not adequate to protect the nondeclarant defendant from prejudice; the court held that when the prosecution proposed to introduce such an out-of-court statement the trial should be severed unless the references implicating the nondeclarant were deleted before the statement was admitted against the declarant. *Massie* extended the *Aranda* requirement to nonjury criminal trials. *Bruton,* involving a federal prosecution, held that admitting against the declarant only, his out-of-court statement implicating a codefendant, violated the codefendant's Sixth Amendment right to confrontation. California cases subsequent to *Aranda* and *Bruton* have held that the *Aranda* requirement is constitutionally compelled in state prosecutions. (*In re Hill* (1969) 71 Cal.2d 997 [80 Cal.Rptr. 537, 458 P.2d 449]; *People* v. *Flores* (1968) 68 Cal.2d 563 [68 Cal.Rptr. 161, 440 P.2d 233].)

The question is whether *Aranda* is to be applied in juvenile jurisdictional hearings. The United States Supreme Court has held that the right to confront witnesses is among the essentials of due process and fair treatment and, as incorporated by the due process clause of the Fourteenth Amendment, must be secured in state juvenile proceedings. (*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; see *In re Winship* (1970) 397 U.S. 358, 368 [25 L.Ed.2d 368, 377, 90 S.Ct. 1068].) In California, Welfare and Institutions Code section 702.5[4] recognizes in minors the right to confront witnesses in jurisdictional proceedings, a right guaranteed by the due process clause. (*In re Michael M.* (1970) 11 Cal.App.3d 741 [96 Cal.Rptr. 887].) ▇ On the basis of *Bruton, In re Gault,* and *In re Winship,* as well as *In re Michael M.,* out-of-court statements made by one juvenile implicating another cannot be admitted

and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

[4]Welfare and Institutions Code section 702.5: "In any hearing conducted pursuant to Section 701 or 702 to determine whether a minor is a person described in Section 601 or 602, the minor has a privilege against self-incrimination and has a right to confrontation by, and cross-examination of, witnesses."

in a joint jurisdictional hearing unless the references implicating the nondeclarant have been effectively deleted; if the inculpatory references cannot be effectively deleted, the hearing must be severed if the statement is to be admitted against the declarant.

In his out-of-court statement C.G. admitted pulling on the belt while it was wrapped around the victim's neck and kicking him while he was down. The statement was read by the officer who took it; the names of the other three youths and the term "everybody" were deleted and replaced in each instance by the word "blank." References to the victim and M.A. were not deleted. Concerning the nondeclarants, the statement reveals that: three "blanks" were present at the scene of the crime, one "blank" got into a fight with the victim, another "blank" joined the fray, "we" hit him with a rock, C.G. and the "other people" kicked him, "they" stopped kicking, and that "we" left the victim while he was still breathing because "we" just wanted to beat him up.

In *Aranda,* the court defined "effective deletion" as requiring not only deletion of direct identifications of codefendants, but deletion of any statements that could be employed against nondeclarant codefendants once their identity was otherwise established (63 Cal.2d at p. 530). In a footnote, the court provided additional guidance as to the meaning of the "effective deletion" requirement:

"The rules governing the cases in which deletion would be a permissible alternative cannot be set out fully. Use of the procedure would depend on the evidence linking the defendants together before and after the crime and on the actual statements made by the declarant defendant.

"In the present case, deletion would have been an effective solution to the joint trial problem. All that Martinez's confession added to the case against Aranda was Aranda's identity. No evidence linked the two together at any other time relevant to the commission of the robbery. Deleting all references to Aranda would not have prejudiced Martinez and what remained would have prejudiced Aranda no more than if Martinez had in fact said that 'I was one of the persons who robbed the store but I will tell you nothing more.' " (63 Cal.2d, fn. 10, pp. 530-531.)

In *People* v. *Massie, supra,* 66 Cal.2d 899, 919, the court held that deletions would be ineffective within the meaning of *Aranda* where references in an out-of-court confession were to "me and John" and

"we" where the declarant and nondeclarant defendant were linked to one another by other admissible evidence. In our case, the use of three distinct "blanks" in a series to replace the names of the three nondeclarant participants unequivocably placed appellant D.L. at the scene of the crime. Moreover, the nondeleted references to "we," "they," and "others," which could technically refer to less than all of the nondeclarants and therefore did not directly implicate appellant D.L., left little doubt, in light of M.A.'s previous testimony implicating all three nondeclarants, that all the youths against whom petitions had been filed had participated in the commission of the crime. ■ The deletions made in the C.G. statement were not adequate to avoid implicating appellant D.L.; the admission of the statement, containing direct and indirect references to appellant D.L., violated his Sixth Amendment right to confrontation.

■ Since the error in admitting the statement was of constitutional dimensions, reversal is required unless the error was harmless beyond a reasonable doubt. (*Bruton* v. *United States, supra,* 391 U.S. 123; *In re Hill, supra,* 71 Cal.2d 997; see *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) *Aranda-Bruton* errors may be rendered harmless beyond a reasonable doubt where there is competent and overwhelming evidence against the implicated nonde-clarant defendant. (*In re Hill, supra,* 71 Cal.2d 997; *People* v. *Flores, supra,* 68 Cal.2d 563; *People* v. *Hill* (1967) 66 Cal.2d 536 [58 Cal.Rptr. 340, 426 P.2d 908].) Here M.A. testified that he saw appellant D.L. pull on the belt which was wrapped around the victim's neck, as well as hit, kick, and stab him. Even if the C.G. statement had been admitted without any deletions it would have done no more than second M.A.'s uncontradicted testimony at trial; it did not implicate appellant D.L. to a greater extent than M.A.'s eyewitness testimony. Moreover, M.A.'s testimony was not the only evidence supporting the finding: another witness who had attended the party placed appellant D.L. at the scene of the crime; appellant's drawing reasonably implied that he had been present; and the physical evidence found at the scene corroborated M.A.'s testimony. ■ In light of this overwhelming evidence against appellant D.L., we are persuaded that admission of the ineffectively edited C.G. statement was harmless beyond a reasonable doubt.

Appellant T.R. does not challenge the admission of the C.G. statement; its effect on his case is nevertheless considered. The admission of the C.G. statement had the same impact on appellant T.R.'s case as on appellant D.L.'s: one series of "blanks" effectively placed him at the

scene of the crime and the words "we," "they," and "others," viewed against the backdrop of M.A.'s testimony, connected him with its commission. Since the deletions were inadequate to avoid implicating appellant T.R., the admission of the C.G. statement was error as to him. However, as in appellant D.L.'s case, the C.G. statement, at worst, was only cumulative. The uncontradicted and corroborated testimony of M.A. placed appellant at the scene of the crime and implicated him in its commission; so did the girl's statement, which was properly considered as substantive evidence. (Evid. Code, § 1235; *People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998].) The admission of the C.G. statement, in light of the overwhelming evidence against appellant T.R., was harmless beyond a reasonable doubt.

Finally, appellant D.L. contends that the evidence against him was insufficient to sustain the referee's finding that he committed voluntary manslaughter. In so doing, he focuses exclusively on the testimony given by M.A. and attacks it by arguing that (1) Penal Code section 1111[5] required it to be corroborated by other evidence, (2) M.A.'s perception was not to be relied upon because it was impaired by glue sniffing, and (3) M.A.'s credibility was impeached.

Appellant's contention that Penal Code section 1111 required corroboration of M.A.'s testimony and his tacit contention that it lacked corroboration are incorrect for two reasons: (1) accomplice testimony in juvenile proceedings is not subject to section 1111 (*In re R.C.* (1974) 39 Cal.App.3d 887 [114 Cal.Rptr. 735]) and (2) even if it were, M.A.'s testimony was corroborated as required by the section by the girl's statement to the effect that appellant left the party with the victim and the other three youths, and that she saw the five fighting where Lupe's body was later found. (*People* v. *Perry* (1972) 7 Cal.3d 756 [103 Cal.Rptr. 161, 499 P.2d 129].)

Appellant attacks the reliability of M.A.'s testimony because he had sniffed paint fumes on the night of the crime. He correctly asserts

---

[5]Penal Code section 1111:

"A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

that evidence of intoxication is relevant to the issue of a witness' capacity to observe, recollect and communicate. (*People* v. *Singh* (1937) 19 Cal.App.2d 128 [64 P.2d 1149].) However, he fails to show that M.A. was intoxicated or that his perception was impaired on the night in question. According to M.A.'s uncontradicted testimony, during the night of the crime he was aware of what he was doing at all times.

In a statement made to a psychiatrist prior to the jurisdictional hearing, M.A. stated that appellant T.R. had pulled on the belt which was around the victim's neck. At the hearing, M.A. testified that from his vantage point he could not see appellant T.R. pull on the belt, but that appellant T.R. was in such a position that he appeared to be pulling on it. The statement made to the psychiatrist was admitted as a prior inconsistent statement. (Evid. Code, § 1235.) On this basis appellant contends that M.A.'s testimony, thus impeached, was insufficient to sustain the finding that the allegation of involuntary manslaughter was true.

The trier of fact is charged with determining the credibility of witnesses. (Evid. Code, § 780; see Evid. Code, § 312.) While M.A.'s testimony was impeached, it cannot be said that M.A.'s testimony was entirely unworthy of belief. (See 6 Witkin, Cal. Procedure (2d ed. 1971) at p. 4236.)

█ The evidence was sufficient to sustain the finding that appellant D.L. had committed voluntary manslaughter and therefore had come within the court's jurisdiction.

Appellant T.R.'s sole contention is that the evidence was insufficient to sustain the finding of voluntary manslaughter; in so contending, he focuses exclusively on the sufficiency of M.A.'s testimony in light of Penal Code section 1111. M.A.'s uncontradicted testimony indicated appellant T.R. was the first to attack the victim and that in the course of the struggle appellant T.R. hit, kicked and stabbed the victim. This evidence was sufficient to sustain the finding that appellant had committed voluntary manslaughter. (Pen. Code, § 192, subd. 1.) Although this testimony did not require corroboration under Penal Code section 1111 (*In re R.C., supra,* 39 Cal.App.3d 887), it was corroborated by the girl's statement and by the police findings at the scene. (*People* v. *Perry, supra,* 7 Cal.3d 756, 769.) The evidence was sufficient to sustain

the finding that appellant T.R. had committed voluntary manslaughter and had thereby come within the court's jurisdiction.

The orders are affirmed. The appeal from the trial court's order denying rehearing is dismissed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied May 8, 1975.