[Nos. A056679, A058354. First Dist., Div. Two. Jan. 19, 1994.]

In re JOSE M. et al., Persons Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE M. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through VIII.

## COUNSEL

James J. Haight and Teri Sklar, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel L. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A Bass, Assistant Attorney General, Laurence K. Sullivan and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SMITH, J.**—Minors Jose M. and Alan A. appeal from juvenile court judgments following their joint trial on petitions alleging two counts each of rape in concert plus great bodily injury enhancements (Pen. Code, §§ 264.1, 12022.8).[1] The counts represented two assaults on Yahaira P., one of them in which Alan allegedly raped her with Jose aiding and abetting, and the other with the assailants' roles reversed. The court found true the counts where Alan was the rapist, and found the enhancement true as to Alan only. It found the other counts not true as charged, evidently based on doubt that Jose achieved penetration. It found true a lesser included offense of assault with intent to commit rape (§ 220), without enhancement. In later proceedings as to Alan, the court made a corresponding petition amendment and finding, on stipulation of counsel, for the lesser offense, also without enhancement. The disposition for Jose was a suspended Youth Authority commitment with ranch placement. Alan was committed to Youth Authority.

### BACKGROUND

The assaults occurred near a San Francisco high school on June 3, 1991. Yahaira and her friend Maria C., 16-year-old students there, cut class after

---

[1] All section references are to the Penal Code unless indicated otherwise.

first period that day and wound up in a canyon behind the school's soccer fields. There they encountered a group of about 10 boys which included Jose (known to them as Hector) and Alan, who were also students. The girls stayed and drank beer or malt liquor which the boys supplied.

There was conflicting testimony. The two girls gave inculpatory accounts, and the boys (Jose did not testify) and their friends tended to support misidentification. We briefly summarize the evidence in support of the judgment.

The girls sat with the boys on some rocks, drank from 40-ounce bottles Alan gave them and became drunk. Jose sat by Yahaira hugging her (inappropriately Maria thought) as she got "kind of crazy" and dizzy. The girls were led to a place in the bushes and lay down there. William G. assisted and stayed with Maria, while Alan did so for Yahaira. Maria got up and left, helped by Alan, to go urinate. A while after returning, she saw Alan on top of Yahaira, kissing and hugging her over her protests, as Jose and other boys who had come over watched. Maria left to urinate again, this time apparently with William.

Yahaira passed out and was carried to another spot, near some bleachers. She awoke to find two boys removing her pants and panties. William tried verbally to stop them, but Alan and Jose, who were also there, did nothing to intervene. Alan mounted and raped Yahaira as she pleaded with him not to and the other boys stood around laughing. Yahaira was a virgin, and the assault was very painful for her, leaving her bloodied and numb. Alan would later gloat in a telephone conversation with her (tape-recorded without him knowing it) that seeing her without clothes provoked him, that he was the first of two or three boys and that he had " '[a]bout five minutes[,] fucking nicely.' " He added, " 'When I got you, you had no blood on you, you were still clean . . . until after I screwed you, when a lot of blood came out . . . .' "

After Alan got off of her, Jose (Hector) got on. Yahaira could not see well but knew him by his Raiders jacket, his size and seeing the side of his face (as he later led her further down the canyon). She could not tell if he penetrated her; she had lost feeling in her vagina. Maria returned to see Yahaira on her back, naked from the waist down, legs wide apart, and bloody in the vaginal area. Jose (Hector) was on his knees between her legs, pulling up his pants. Yahaira was crying and screamed out for Maria to help her. Maria got close enough to grasp her hand but was pulled away. William took Maria aside and tried to calm her.

The next thing Yahaira remembered was Jose carrying her away to a part of the canyon about "half a block" distant, where there was no one else. He

laid her on the ground, covered her and tried to calm her. About half an hour later, when she stopped crying and stood up to leave, he said, "I took care of you, and you just going to leave like that without paying me?" Yahaira felt too dizzy to walk. Over her protests, he pressed her against a tree trunk and held her there, her chest to the tree, as he pulled her pants and panties down to her knees. He placed his penis against her buttocks, but she managed to pull her pants back up.

Three days later, on the morning of June 6, Yahaira was called in by an assistant principal. She initially denied but then admitted that an assault occurred. A sexual assault examination that afternoon revealed serious vaginal trauma consistent with her report of multiple rape.

At the urging of a police inspector, Yahaira telephoned Alan on June 10 and tape-recorded their conversation. Alan made the admissions already noted. He also said that Hector "wanted to" but did not do anything, that Armando ("Broncas") "gave it to you from the front and the back" while the others watched and that Yahaira's missing gold chain must have been taken by Hector because he saw that she had it on when Hector took her further down into the canyon.

Alan testified that his references to "Hector" were to Jose or Armando. He denied any assault, said he made up the conversation to get Yahaira to stop calling and insisted that he and Jose had left the canyon.

The minors relied on various inconsistencies, alibi and the possibility that Yahaira, in her inebriated condition, mistook someone else wearing a Raiders jacket that day for Jose.

## DISCUSSION

### I

■ Jose contends that the court lacked jurisdiction to find that he committed assault with intent to commit rape, the offense not being necessarily included within the charge of rape in concert. We disagree.

■ Adult criminal law principles of due process notice apply to juvenile proceedings in this context. (*In re Alberto S.* (1991) 226 Cal.App.3d 1459, 1464 [277 Cal.Rptr. 475].) ■ "Section 1159 authorizes the trier of fact to 'find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.' An offense is necessarily included in another if (1) the

greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater; or (2) if the charging allegations of the accusatory pleading include language describing it in such a way that if committed in that manner the lesser offense must necessarily be committed. [Citations.]" (*People* v. *Clark* (1990) 50 Cal.3d 583, 636 [268 Cal.Rptr. 399, 789 P.2d 127].)

Jose's contention rests mainly on the premise that because rape in concert may be committed by aiding and abetting rather than personally committing the rape, one can commit rape in concert without necessarily having the specific intent to rape required by assault with intent to commit rape. The flaw in this premise is that in count I, the one at issue here, he was specifically charged with "personally" committing the rape while Alan "aided and abetted" him. He was thus on notice that he was being charged only as the direct perpetrator.

Moreover, rape in concert requires a rape "by force or violence," the alternative means of duress, menace or fear allowed for ordinary rape (§ 261, subd. (a)(2)) being unavailable.[2] One charged with rape by force or violence may be found guilty of assault with intent to commit rape (*People* v. *Ramirez* (1969) 2 Cal.App.3d 345, 353 [82 Cal.Rptr. 665]), the latter being merely an aggravated form of attempted rape—that is, a form also requiring an assault (*People* v. *Ghent* (1987) 43 Cal.3d 739, 757 [239 Cal.Rptr. 82, 739 P.2d 1250], cert. den. (1988) 485 U.S. 929 [99 L.Ed.2d 261, 108 S.Ct. 1099]). Every act of rape, of course, necessarily includes an assault. Thus the inclusion of specific intent in section 220 did not prevent its application to Jose. (Cf. § 1159.)

Alan raises the same root issues. Because his trial counsel *stipulated* to amending the petition and finding assault with intent to commit rape, however, he cannot complain of it directly. (*People* v. *Calder* (1970) 6 Cal.App.3d 931, 934-936 [86 Cal.Rptr. 446].) He does so indirectly by claiming ineffective assistance, urging that counsel should not have stipulated. The claim lacks merit.

Count II, the relevant count in his petition, had mirrored Jose's count I, charging that Alan aided and abetted a rape perpetrated directly by Jose. Alan incorporates Jose's arguments that assault with intent to commit rape

[2]Section 264.1 states in part: "[I]n any case in which the defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed an act described in Section 261 [rape] or 289 [penetration by foreign object], either personally or by aiding and abetting the other person, . . . the defendant shall suffer confinement in the state prison for five, seven, or nine years."

contains an intent element absent from a rape in concert perpetrated as an aider and abettor. However, count II was amended not to allege that Alan personally intended to commit rape, but that he aided and abetted *Jose's* assault. The amendment awkwardly left intact the now superfluous "in concert" and actual-rape language of the original charge, but it clearly charged that Alan only "aided and abetted" the substituted lesser offense.[3]

We have held as to Jose that section 220 was merely an aggravated form of *attempt* applicable to one charged as a direct perpetrator under section 264.1. It would seem to follow that one charged as aiding and abetting the greater offense may be found to have aided and abetted the lesser. In the context of Alan's ineffective assistance claim, it is enough to note that we are cited no contrary authority of which counsel should have been aware (*People* v. *Pope* (1979) 23 Cal.3d 412, 425-426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]); one may certainly commit an attempt offense by aiding and abetting it (see, e.g., *People* v. *Montano* (1979) 96 Cal.App.3d 221, 227 [158 Cal.Rptr. 47] [attempted murder]). Alan has not shown deficient performance.

## II

Jose raises numerous claims based on *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265] (*Aranda*) and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620] (*Bruton*). Jose moved before trial to sever his jurisdictional hearing from Alan's or, in the alternative, sanitize any incriminating statements Alan made in a tape-recorded telephone conversation with Yahaira a week after the assault. Severance was denied on the understanding that a redacted transcript would be used, and such a transcript was used and moved in evidence after the close of the case-in-chief. Alan then chose to testify, however, and his counsel, to bolster Alan's claim that the conversation was a fantasy invented to get Yahaira to stop calling, strayed into redacted areas of the conversation under an asserted right to introduce the whole of it (Evid. Code, § 356) subject to redactions Jose might want. Petitioner, and Jose too, likewise ventured into redacted areas in cross-examining Alan, and an unedited version was ultimately admitted, Jose's counsel offering no redactions and saying she had no objection.

Jose now contends that the court inadequately assessed the *Aranda* motion, joined later in a breach of agreement, denied him full cross-examination of Alan and should have excluded the evidence for risk of undue

---

[3]The count, amended only to substitute "220" for "264.1," accused Alan of a felony "violation of section 220 . . . , committed as follows: The said minor Jose [M.] . . . did personally commit [forcible rape] and that said minor Alan [A.], aided and abetted the minor Jose [M.], and that the minors . . . voluntarily acted in concert with each other and with other persons in the commission of said offense."

prejudice (Evid. Code, § 352). The Attorney General responds that there was no *Aranda* error, that no agreement was breached, that the court did not limit Jose's counsel, that Jose waived the *Aranda* issue and never objected based on undue prejudice, and that *Aranda* did not apply in any event. Jose rejoins in part that his trial counsel rendered ineffective assistance and that to deny *Aranda*'s application here would deny him equal protection and apply new law retroactively.

■ We find this case controlled by recent authority in *People* v. *Walkkein* (1993) 14 Cal.App.4th 1401 [18 Cal.Rptr.2d 383] (*Walkkein*) (review den. July 15, 1993), which holds that *Aranda/Bruton* procedures are not required in trials to the court as opposed to a jury.

Jose acknowledges that *Aranda*, to the extent that it went beyond *Bruton* to hold that exclusion may be required even though the declarant testifies and thus affords his inculpated codefendant the right to cross-examine, was abrogated by the adoption of Proposition 8 in 1982, which added section 28, subdivision (d) (section 28(d)) to article I of the California Constitution, requiring conformance to federal law exclusionary rules. This abrogation of *Aranda* has been settled since 1990. (*People* v. *Boyd* (1990) 222 Cal.App.3d 541, 559-563 [271 Cal.Rptr. 738]; cf. *People* v. *Mitcham* (1992) 1 Cal.4th 1027, 1045, fn. 6 [5 Cal.Rptr.2d 230, 824 P.2d 1277].)

A second abrogation flowing from section 28(d) was noted more recently in *Walkkein*. It had long been intimated by our Supreme Court that *Aranda* might apply in cases tried to the court rather than a jury, the theory being that while a judge, as opposed to a jury, was better able to consider extrajudicial statements solely as to the declarant defendant and not his inculpated codefendant, it might be advisable to insulate a judge as well. (*People* v. *Charles* (1967) 66 Cal.2d 330, 338-339, fn. 12 [57 Cal.Rptr. 745, 425 P.2d 545].) Federal courts, by contrast, long held it unnecessary to insulate jurists like juries and thus held *Bruton* inapplicable to bench trials. (See, e.g., *Rogers* v. *McMackin* (6th Cir. 1989) 884 F.2d 252, 254-255, cert. den. (1990) 493 U.S. 1061 [107 L.Ed.2d 960, 110 S.Ct. 877]; *United States ex rel. Faulisi* v. *Pinkney* (7th Cir. 1979) 611 F.2d 176, 178; *United States* v. *Castro* (1st Cir. 1969) 413 F.2d 891, 894-895, cert. den. (1970) 397 U.S. 950 [25 L.Ed.2d 132, 90 S.Ct. 974]; *Cockrell* v. *Oberhauser* (9th Cir. 1969) 413 F.2d 256, 257-258.) Noting that divergence, the effect of Proposition 8 and California case law similarly presuming judges able to avoid risks of prejudice posed by limited admissibility, *Walkkein* decided, "under controlling authority and as a matter of policy, that . . . section 28(d) abrogates *Aranda* to the extent *Aranda* prohibits the admission of a codefendant's statement incriminating the accused in a trial to the court." (*Walkkein, supra,* 14 Cal.App.4th 1401, 1409.) We agree.

It follows, then, that the prophylactic strictures of *Aranda* and *Bruton* did not apply in this case, a juvenile jurisdictional hearing tried to the court. Case law predating the passage of Proposition 8 had assumed that *Aranda* and *Bruton* did apply to juvenile jurisdictional hearings (*In re D. L.* (1975) 46 Cal.App.3d 65, 70-71 [120 Cal.Rptr. 276]), but the California Constitution, since section 28(d) was added in 1982, now overrides that authority. Where two or more minors are tried together, the juvenile court generally operates under the same severance rules applicable to criminal trials (Welf. & Inst. Code, § 675, subd. (b)), and section 28(d) expressly applies in criminal trials and "in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. . . ."

Jose contends that we cannot deny *Aranda*'s application to his trial because it was held before *Walkkein* was decided and that the court in *Walkkein* was powerless to "overrule" contrary Supreme Court precedent. The argument fails. The precedent he cites was dictum (*People v. Charles*, *supra*, 66 Cal.2d 330, 338, fn. 12) and, in any event, far preceded Proposition 8. Section 28(d) took effect in June 1982, creating a state constitutional impediment to this aspect of *Aranda* long before this trial. Section 28(d) had long been held applicable to proceedings for crimes committed on or after its effective date (*People v. Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149]), and even the cases to first declare its abrogating effects have applied it to any post-Proposition 8 offenses at bar. (E.g., *In re Lance W.* (1985) 37 Cal.3d 873, 880, 888-892 [210 Cal.Rptr. 631, 694 P.2d 744]; *Walkkein*, *supra*, 14 Cal.App.4th 1401, 1406-1409; *People v. Boyd*, *supra*, 222 Cal.App.3d 541, 561-563.) *Walkkein* only declared what the law had been since June 1982.

Jose sees a denial of equal protection in the fact that adult criminal defendants, unlike juveniles in delinquency proceedings, have the option of demanding a jury trial and thus securing the benefits of *Aranda/Bruton*. This in essence argues that denying juveniles a jury denies them equal protection. ■ Juveniles enjoy no state or federal due process right to a jury trial (*McKeiver v. Pennsylvania* (1971) 403 U.S. 528, 543-551 [29 L.Ed.2d 647, 659-664, 91 S.Ct. 1976]; *People v. Superior Court* (Carl W.) (1975) 15 Cal.3d 271, 274 [124 Cal.Rptr. 47, 539 P.2d 807]; *In re Charles C.* (1991) 232 Cal.App.3d 952, 955-957 [284 Cal.Rptr. 4]), and denying them that aspect of adult proceedings does not deny them equal protection (*In re T.R.S.* (1969) 1 Cal.App.3d 178, 181 [81 Cal.Rptr. 574]).

Jose also claims error independent of *Aranda/Bruton*, but unconvincingly. His claim that severance was alternatively compelled under ordinary severance criteria (*People v. Massie* (1967) 66 Cal.2d 899, 916-918 [59 Cal.Rptr.

733, 428 P.2d 869]; cf. *People* v. *Pitts* (1990) 223 Cal.App.3d 606, 857 [273 Cal.Rptr. 757]) fails because he offered no reasons below beyond *Aranda* reasons and makes no effort here to explain why non-*Aranda* criteria compelled severance.

His claim that the prosecutor violated an agreement to sanitize (regardless of *Aranda*) raises in essence prosecutorial misconduct. While one court has suggested in dictum that this ground of error might be viable where the declarant's decision to testify makes *Aranda* sanitizing unavailable to a codefendant *in a jury trial* (*People* v. *Boyd, supra,* 222 Cal.App.3d 541, 563-564 [but issue not preserved by objection]), the notion carries little force in trial to the court, where the fact finding judge is presumed capable of properly utilizing evidence admitted for limited purposes. (Cf. *People* v. *Lashley* (1991) 1 Cal.App.4th 938, 952 [2 Cal.Rptr.2d 629].) Here, for example (and without deciding whether any misconduct occurred), we see no such confusion or prejudice on the judge's part; Jose shows none.

■ Similarly flawed are Jose's interwoven claims that (1) the court should have excluded inculpatory matters under Evidence Code section 352 or (2) ineffective assistance resulted if trial counsel failed to adequately raise the issue. The code section concerns probative value being substantially outweighed by danger from "undue prejudice" or "confusing the issues" or "misleading the jury" (Evid. Code, § 352)—dangers which a court trial either minimizes or, in the case of jury confusion, cannot pose. Jose does not show that the court prejudged him or his case based on extraneous factors (*People* v. *Zapien* (1993) 4 Cal.4th 929, 958 [17 Cal.Rptr.2d 122, 846 P.2d 704]), much less that the probative value of the full transcript, which Alan claimed was needed to give context to his conversation (*id.,* at p. 959; Evid. Code, § 356), was "substantially outweighed by the probability" of such danger (Evid. Code, § 352).

■ The last claim is that the court denied Jose's right to confront and fully cross-examine Alan by limiting the use of leading questions. This fails because the court acknowledged counsel's right to use leading questions on cross-examination (Evid. Code, §§ 764, 767, subd. (a)(2)) and did not, except perhaps in one egregious instance (objection as to form), sustain objections based on leading. Rather, the court told counsel to "make your examination as you see fit" and "examine the witness any way you want," but candidly reminded her that the degree to which answers seemed to come from the questions, rather than the witness, could affect "the amount of weight that I'm willing to give that and the credibility that I can attach to that answer . . . ." The court suggested that it "might be better" or "more effective" to ask less leading questions. Contrary to Jose's argument, this

was not a limitation on cross-examination; it was an honest reaction which trial counsel could expect of any trier of fact—judge or jury. No confrontation error appears.

### III-VIII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgments are affirmed.

Kline, P. J., and Benson, J., concurred.

---

*See footnote, *ante*, page 1470.