Filed 5/3/24

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B324572 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. VA057753-02 |
| v. | |
| OSCAR ANTONIO PALACIOS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge. Affirmed.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Nicholas J. Webster and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

*      Under California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 3 of the Discussion section.

A jury convicted Oscar Antonio Palacios of special circumstance murder, robbery, and burglary.  Palacios confessed to the crimes, and his confession was admitted at his trial.  Some two decades later, Palacios filed a petition for resentencing under the provisions now found in Penal Code section 1172.6.[1]  In connection with the petition, Palacios argued his confession was involuntary and urged the court to exclude it.  The court declined to consider the issue, noting Palacios had not raised it at his trial.  The court admitted the confession and found Palacios was a major participant in the underlying offenses and acted with reckless indifference to human life.  Accordingly, the court denied the petition.

On appeal, Palacios primarily argues the superior court erred by refusing to consider excluding his confession on the ground it was involuntary, despite his failure to raise the issue at his trial.  We disagree.  A resentencing hearing under section 1172.6 is not a new trial.  Nor does it provide the petitioner a new opportunity to raise claims of trial error.  Instead, it is a limited proceeding at which the superior court must decide one issue:  could the petitioner "not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1172.6, subd. (a)(3).)  To decide that issue, the statute expressly allows the court to consider "evidence previously admitted at any prior hearing

---

[1]    Statutory references are to the Penal Code.  Palacios filed his petition under former section 1170.95.  Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6 with no change in text.  (Stats. 2022, ch. 58, § 10.) (*People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).)

or trial that is admissible under current law." (*Id*., subd. (d)(3).) Palacios's confession falls within that category, as it was admitted at his trial and remains admissible under current law. The time to litigate whether the confession should have been admitted at trial has long passed, and the superior court properly refused to consider the issue for the first time. We therefore affirm the order denying Palacios's petition.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    *The crimes*[2]

On January 3, 2000, police found Ricardo Rios dead inside his Bellflower apartment. Rios was lying on the living room floor; his head was bloody and his body was cold to the touch. Various items were missing from his apartment, including a CD player, a DVD player, a VCR, and a receiver for a television satellite dish. There were two sets of bloody shoe prints, neither of which matched any of Rios's shoes. A set of brass knuckles was on the floor. A semi-automatic pistol was lying under a tipped-over stereo speaker. A plastic knife handle missing its blade was found under the living room couch. A backpack containing CDs and a DVD was sitting on a staircase. A Sunbeam clothes iron was on the floor of an upstairs bedroom; the iron was missing its electric cord. Bloody clothes—a sweatshirt and a T-shirt— were found in the garage.

The medical examiner testified Rios had an electric cord wrapped around his neck and he could have been strangled

---

[2]    Palacios's arguments on appeal do not concern the facts of his crimes. Therefore, we take those facts from the opinion on direct appeal by another panel of this court. (See *People v. Palacios* (Apr. 10, 2002, B148544) [nonpub. opn.].)

3

to death. Rios also had suffered blunt force injuries to his face and both sides of his head; these injuries too could have caused his death. There were two nonfatal stab wounds in his left side. He did not have any defensive wounds. Marks found on his arms suggested he had been restrained.

On January 1, 2000, two days before Rios's body was found, Compton Police Officer Michael Verlich had responded to a disturbing the peace call at El Rancho Mobile Homes trailer park. Verlich saw a group of people standing around a red Honda Civic. When the Honda took off, Verlich activated his lights and pursued it. The Honda stopped and the driver fled, leaving the keys in the ignition. It turned out the red Honda had belonged to Rios.

Palacios, who was 18 years old, was living with his mother at El Rancho Mobile Homes. His mother testified that a pair of black tennis shoes found by police belonged to Palacios. One of the shoes had a unique accidental mark in the sole that exactly matched one set of the bloody shoe prints in Rios's apartment. Police also discovered Palacios's fingerprints on the Sunbeam iron that had the missing electric cord.

## 2.    *Palacios's confession*[3]

The police interrogated Palacios several times while he was in custody. During the first interrogation, a detective told

---

[3]    The parties refer to Palacios's statements to police as a confession, although it might be more accurate to classify them as admissions. (See *People v. Maynarich* (1978) 83 Cal.App.3d 476, 481 [discussing the differences between confessions and admissions].) The distinction is not important for our purposes, so we also refer to the statements as a confession.

4

Palacios his name had "come up" in a murder investigation, and police had discovered his fingerprints on an iron. The detectives told Palacios they planned to charge him with murder and he faced a long prison sentence. They suggested Palacios might be better off if he told them his side of the story. Palacios started crying at one point, but he steadfastly denied any knowledge of the crimes. The detectives ended the interview after Palacios asked for an attorney.

About eight hours later, Palacios contacted the detectives and said he wanted to talk. At the start of the second interrogation, Palacios denied having been threatened or receiving any promises about the case. Palacios then confessed his involvement in the crimes.

According to Palacios, two friends—Oso and Pee-Wee— picked him up at the trailer park the night of the murder. Both men were members of the Tiny Gangsters gang. Oso said he needed to "tax this fool" who owed him money. Palacios suggested they "break in and . . . let's take some stuff and that's it." Oso showed Palacios his gun and let Palacios hold it. Oso also mentioned he had brass knuckles.

Palacios, Oso, and Pee-Wee drove to Rios's apartment and went inside. The three men went upstairs, trying not to wake Rios, who was asleep on the sofa. Oso and Pee-Wee suggested they might need to kill Rios, and they started looking for a rope. Palacios was not paying attention and did not think about killing Rios.

Palacios found a steam iron he wanted to take with him because he needed an iron. While he was holding the iron, Palacios heard a noise outside and decided to check on it. He wrapped up the cord on the iron and put it away in a cabinet.

At some point, Palacios decided to go back inside the apartment to tell Oso and Pee-Wee he planned to take the iron with him.  He saw Oso and Pee-Wee hitting Rios with brass knuckles and choking him with a rope.  Although not entirely clear, it seems Rios tried to escape and was "half ways" out the door, but Palacios pushed him back inside.  Oso and Pee-Wee grabbed Rios and "beat [him] up."  Rios was knocked unconscious, and Palacios suggested they leave.

Palacios continued loading Rios's belongings into Oso's car. Pee-Wee and Oso came outside and they left with Palacios. Palacios kept Rios's VCR.

### 3.    *The verdict and sentence*

Based on this evidence a jury convicted Palacios of special circumstance first degree murder, robbery, and burglary. (§§ 187, 190.2, subd. (a)(17), 211, 459.)  The court sentenced Palacios to life without the possibility of parole for the murder. The court imposed and stayed the sentences on the other counts.

### 4.    *Palacios's petition for resentencing*

In May 2021, Palacios filed a petition for resentencing under former section 1170.95.  The court found Palacios had established a prima facie case and it issued an order to show cause.  The People filed an opposition, arguing Palacios is ineligible for relief because he was a major participant in the underlying felonies and acted with reckless indifference to human life.  The People relied heavily on Palacios's confession, which was the only direct evidence of his role in the crimes.

After reviewing the opposition, the superior court told the parties it "believe[d] there is a potential issue regarding whether [Palacios's] confession to the police was made voluntarily; more specifically, whether [Palacios] confessed

6

in response to threats or promises of leniency which rendered his confession inadmissible." The court asked the parties to submit briefs answering three questions: (1) Was the voluntariness issue litigated in the trial court? (2) May a court consider the voluntariness of a confession when deciding whether to admit evidence in connection with a section 1172.6 petition? (3) If so, do the parties have additional evidence to present on the issue?

Palacios and the People agreed the voluntariness issue had not been litigated at trial.[4] However, they disagreed about whether the court could consider the issue for the first time in connection with Palacios's petition. Palacios urged the court to consider the issue and exclude his confession on the ground it was involuntary. The People argued if the confession had been "admitted at trial and the rules of admissibility have *not* changed since the trial was held, then the Court may consider" the evidence in connection with the petition.

The court issued a tentative decision that it would not consider the admissibility of the confession. The court reasoned that, because a resentencing hearing is a postconviction proceeding rather than a trial de novo, the petitioner does not have the same rights guaranteed to criminal defendants under the due process clause of the federal Constitution. The court noted the parties could still address the reliability of the confession by way of argument or new evidence.

---

[4] According to Palacios, he raised an objection under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) at the preliminary hearing, which the court overruled.

The court held an evidentiary hearing in September 2022. Neither party presented live testimony. At the People's request, the court admitted into evidence the reporter's transcript from the trial, as well as a transcript of Palacios's interrogations. The court took judicial notice of the court file from the trial, which also included Palacios's interrogations. The court noted the interrogations had been admitted into evidence at trial.

Palacios again urged the court not to admit his confession, arguing his "statements were taken in clear violation of his *Miranda* rights" and should have been excluded at trial on that basis. Without his confession, Palacios argued, the People could not prove he was a major participant in the offenses.

The court said it continued to stand by its tentative ruling and would not consider the admissibility of the confession on the ground it was involuntary. The court pointed to a recent appellate decision—*People v. Mitchell* (2022) 81 Cal.App.5th 575 —holding there is no right to be free from self-incrimination at a resentencing hearing. The court went on to determine Palacios was a major participant in the robbery and burglary and acted with reckless indifference to human life. On that basis, the court found him ineligible for relief and denied his petition.

Palacios timely appealed.

### DISCUSSION

1. ***Relevant law***

"In Senate Bill No. 1437 (2017–2018 Reg. Sess.) . . . , the Legislature significantly narrowed the scope of the felony-murder rule. It also created a path to relief for defendants who had previously been convicted of murder on a felony-murder theory but who could not have been convicted under the new law. Resentencing is available under the new law if the defendant

8

neither killed nor intended to kill and was not 'a major participant in the underlying felony [who] acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] section 190.2' (Pen. Code, § 189, subd. (e); see *id*., § 1172.6; Stats. 2018, ch. 1015, §§ 3–4; Stats. 2022, ch. 58, § 10)." (*Strong, supra,* 13 Cal.5th at p. 703.)

Section 1172.6 provides a mechanism by which a person convicted of murder under the former law may be resentenced if he could no longer be convicted of murder because of the changes to section 188. (*Strong, supra*, 13 Cal.5th at p. 708; see generally *People v. Gentile* (2020) 10 Cal.5th 830, 843; *People v. Lewis* (2021) 11 Cal.5th 952, 959–960.) Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (*Strong*, at pp. 708–709; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6. (*Strong*, at pp. 708–709; *Vargas*, at p. 951.)

## 2. *The superior court properly admitted Palacios's confession*

Palacios argues the superior court erred by admitting his confession into evidence without first determining whether it was voluntary. According to Palacios, an involuntary confession is inadmissible under Evidence Code section 1204 because its use violates the due process clauses of the United States and

9

California Constitutions.[5]  (See *People v. Benson* (1990) 52 Cal.3d 754, 778 (*Benson*).)  Palacios asserts the superior court committed reversible error by refusing even to consider excluding his confession on this basis.

Palacios's argument rests on the premise that the Evidence Code governs the admission of all evidence offered at a section 1172.6 resentencing hearing.  In support of that premise, Palacios points to section 1172.6, subdivision (d)(3) (section 1172.6(d)(3)).  It states the "admission of evidence in the [resentencing] hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed." (§ 1172.6, subd. (d)(3).)  As we understand his argument, Palacios contends the phrase "shall be governed by the Evidence Code" requires a court to exclude all evidence it determines to be inadmissible under the Evidence Code, even if the evidence was admitted at a prior trial.

Resolution of Palacios's argument requires us to interpret section 1172.6.  "When interpreting a statute, a court's role 'is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin as always with the statute's actual words, the "most reliable indicator" of legislative intent, "assigning them their usual and ordinary meanings, and

---

[5]     Evidence Code section 1204 provides a "statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made . . . under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California."

construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." ' " (*People v. Cody* (2023) 92 Cal.App.5th 87, 101 (*Cody*).)  We presume the Legislature intended the entire statute to have effect, and we aim to avoid interpretations that render any part meaningless. (*People v. Arias* (2008) 45 Cal.4th 169, 180.)

With these principles in mind, we reject Palacios's interpretation of section 1172.6.  Contrary to his suggestions, section 1172.6(d)(3) plainly creates more than one standard for the admission of evidence at a resentencing hearing.  First, it provides a general rule that admissibility is "governed by the Evidence Code." (§ 1172.6, subd. (d)(3).)  It then exempts from the general rule "evidence previously admitted at any prior hearing or trial that is admissible under current law." (*Ibid*.)  This language would be meaningless if—as Palacios suggests—the admissibility of evidence admitted at a prior trial remained subject to the Evidence Code.  Indeed, as one court recently put it, if section 1172.6(d)(3) "means that properly admitted former witness testimony must once again be run through the rigorous filter of the rules of evidence—but at a different time, under different circumstances—the exception for previously admitted testimony would be superfluous." (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1159 (*Davenport*).)

11

In this case, the People sought to admit Palacios's confession under section 1172.6(d)(3)'s exception for previously admitted evidence. Under the exception, the confession was admissible if the People established (1) the confession had been admitted at a prior trial or hearing, and (2) the confession remained "admissible under current law." (§ 1172.6, subd. (d)(3).) The parties do not dispute Palacios's confession had been admitted at his trial. Therefore, the only issue is whether the evidence remained "admissible under current law."

On that issue, Palacios does not directly address the meaning of the phrase "admissible under current law." To the extent he suggests it requires a court to determine whether the evidence is admissible under the current Evidence Code, we disagree. That interpretation would, once again, effectively render meaningless section 1172.6(d)(3)'s exception for previously admitted evidence.

Instead, we agree with the interpretation proposed in *Davenport, supra*, 95 Cal.App.5th 1150. The court in *Davenport* explained, "[t]o the extent the phrase 'is admissible under current law' creates ambiguity, we think the most natural reading of those words is that the basis for admission of testimony *at the hearing or trial in which it was previously admitted must remain a valid basis for admitting the testimony* 'under current law.' The statute 'contemplate[s] that there may be some evidence that was admitted at a former trial that would <u>not</u> be admissible [in such a proceeding] under current law.' " (*Id*. at pp. 1158–1159.)

Here, Palacios has never sought to exclude his confession on the basis it was admitted at trial on a ground that is no longer valid. Nor could he, as there have been no changes in the law since his trial that would affect the admissibility of the

12

confession.  If the trial were to take place today, the confession could be admitted for the same reasons it was admitted at trial: it is highly probative of Palacios's guilt and is exempt from the hearsay rule.  (See Evid. Code, §§ 351 [as a general rule, "all relevant evidence is admissible"], 1220 [evidence of a "statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party"].)  Palacios suggests no grounds for excluding the confession today that were not available at the time of his trial.  Accordingly, the confession is "admissible under current law" for purposes of section 1172.6(d)(3), and the court properly admitted it into evidence.

Palacios alternatively suggests, regardless of the statutory requirements, due process guaranteed him the right to challenge his confession as involuntary.

"Notice and an opportunity to be heard are the fundamental hallmarks of due process whenever 'life, liberty, or property' is put in jeopardy."  (*People v. Silva* (2021) 72 Cal.App.5th 505, 523.)  Here, despite the superior court's refusal to consider excluding the confession on voluntariness grounds, Palacios had ample notice and opportunity to be heard on the issue.  At the time of his trial, it was already well established that involuntary confessions are inadmissible.  (See, e.g., *Benson, supra*, 52 Cal.3d at p. 778 ["[a]n involuntary confession, of course, is inadmissible under the due process clauses of both" the federal and state Constitutions].)  Palacios was represented by counsel and had every incentive to seek to exclude his confession at that time.  Indeed, it appears he attempted to do so, albeit on *Miranda* grounds.  For whatever reason, Palacios failed to raise the voluntariness issue at his trial.  He also declined to raise

13

the issue on appeal or indirectly through a claim of ineffective assistance of counsel. Due process does not require the Legislature or the courts to grant Palacios yet another opportunity to raise the issue.

Our conclusion finds further support in the fact the court's refusal to consider the admissibility of Palacios's confession did not meaningfully undermine the justifications for excluding involuntary confessions at trial. The California Supreme Court has articulated three reasons why due process requires the exclusion of involuntary confessions: "[1] because they are untrustworthy, [2] because it offends 'the community's sense of fair play and decency' to convict a defendant by evidence extorted from him, and [3] because exclusion serves to discourage the use of physical brutality and other undue pressures in questioning those suspected of crime." (*People v. Atchley* (1959) 53 Cal.2d 160, 170 (*Atchley*).)

As to the first justification, although the superior court refused to consider excluding the confession as involuntary, the court did not refuse to consider how the confession's voluntariness—or lack thereof—affected its trustworthiness. To the contrary, the court expressly invited the parties to present evidence and argument on the issue. Moreover, because the resentencing hearing was before a court, rather than a jury, there was less risk the admission of an untrustworthy confession would cause undue prejudice. (See *In re Jose M.* (1994) 21 Cal.App.4th 1470, 1481 [court trials minimize the danger of undue prejudice].)

Nor did the court's refusal to consider the voluntariness issue significantly undermine the other justifications for the exclusionary rule. By failing to object to the confession on

14

voluntariness grounds at trial, Palacios implicitly conceded it had not been extorted from him. Given this concession, the court's admission of the confession without revisiting the voluntariness issue is neither unfair nor "indecent." We also suspect any deterrent effect from excluding an involuntary confession at a resentencing hearing is minimal, especially when compared to the deterrent effect of the general rule excluding involuntary confessions at trial. (See *Atchley*, *supra*, 53 Cal.2d at p. 170.)

Finally, we reject Palacios's suggestion that due process guarantees him the right to challenge his confession on voluntariness grounds at any time. Contrary to his suggestion, the right to object to a confession as involuntary is not absolute. As relevant here, the claim is subject to the general forfeiture rule, meaning a defendant ordinarily must raise the issue at trial in order to preserve it. (See *People v. Williams* (2010) 49 Cal.4th 405, 435 ["A defendant ordinarily forfeits elements of a voluntariness claim that were not raised below."]; *People v. Tully* (2012) 54 Cal.4th 952, 992 [defendant forfeited argument that his statements to police were involuntary].)

By exempting from general admissibility determinations evidence admitted at a prior trial, section 1172.6(d)(3) effectively extends the general forfeiture rule to resentencing hearings. Just as a defendant may not raise a new evidentiary objection on appeal, a petitioner who failed to make a specific evidentiary objection at trial may not raise the issue for the first time at a resentencing hearing. This is consistent with the limited nature of section 1172.6 proceedings and reflects a reasonable legislative determination that resentencing hearings are not the proper forum to litigate issues that could have been raised at trial. (See

15

*People v. Farfan* (2021) 71 Cal.App.5th 942, 947 [a resentencing hearing does not afford the petitioner "a new opportunity to raise claims of trial error"]; *Cody, supra*, 92 Cal.App.5th at p. 104 [noting the Legislature plainly did not intend for resentencing hearings to become new court trials]; see also *People v. Njoku* (2023) 95 Cal.App.5th 27, 44–45 [a "petitioner under section 1172.6 does not possess many of the constitutional rights afforded to a criminal defendant at trial"]; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [retroactive relief afforded by former section 1170.95 "reflects an act of lenity by the Legislature" that does not implicate all the defendant's constitutional rights].)

For all these reasons, we conclude the superior court did not err by declining to consider whether Palacios's confession was voluntary before admitting it into evidence. By establishing the evidence had been admitted at a prior trial and remained admissible under current law, the People satisfied all the requirements for admission under section 1172.6(d)(3). Neither the statutory text nor due process required the court to conduct additional analysis.

3. ***We presume the court considered Palacios's youth***[**]

[[Begin nonpublished portion.]]

Palacios argues the superior court erred by failing to consider his youth at the time of the offenses when determining whether he was a major participant and acted with reckless indifference to human life.

---

[**] See footnote, *ante*, page 1.

16

We agree with the Attorney General that Palacios forfeited this issue by failing to raise it in the superior court. Generally, an appellant may not raise an issue on appeal unless he raised it below. (See *People v. Fuiava* (2012) 53 Cal.4th 622, 653 [defendant "forfeited this claim by failing to raise this issue below, when the trial court could have remedied the alleged shortcoming"]; *Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].) As Palacios seems to concede, he never argued—in his papers in support of his petition or orally before the superior court—his youth was relevant to whether he was a major participant or acted with reckless indifference to human life. Nor did Palacios mention the issue after the court announced its ruling and asked if he had anything to add to the record. By failing to raise the issue below, Palacios has forfeited it on appeal.

Palacios argues his failure to raise the issue below is excusable because, at the time of his resentencing hearing, it was not yet established that resentencing courts may consider a petitioner's youth. Palacios is mistaken. The court held the resentencing hearing in September 2022. By that time, at least four cases had been issued in which courts stated an offender's youth is relevant to whether he was an active participant in a felony and acted with reckless indifference to human life. (See *People v. Harris* (2021) 60 Cal.App.5th 939, 960 (*Harris*); *In re Moore* (2021) 68 Cal.App.5th 434, 454 (*Moore*)*; People v. Ramirez* (2021) 71 Cal.App.5th 970, 986–987 (*Ramirez*); *In re Harper* (2022) 76 Cal.App.5th 450, 470 (*Harper*).)

In *Harris, supra*, 60 Cal.App.5th 939, for example, the court reversed a summary denial of a resentencing petition,

noting "given [the petitioner's] youth at the time of the crime, particularly in light of subsequent case law's recognition of the science relating to adolescent brain development [citations], it is far from clear that [the petitioner] was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants.' " (*Id*. at pp. 944–945, 960.) About six months later, in August 2021, the court in *Moore, supra*, 68 Cal.App.5th 434, went "one step further" and explicitly held "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life." (*Id*. at p. 454.) Two more cases followed—*Ramirez, supra*, 71 Cal.App.5th 970, in November 2021 and *Harper, supra*, 76 Cal.App.5th 450, in March 2022—that discussed the relevance of an offender's youth in the context of resentencing petitions. (See *Ramirez*, at p. 987; *Harper*, at p. 470.) Given the state of the law at the time of Palacios's resentencing hearing, we decline to excuse his failure to raise the issue in the superior court.

Even if we were to overlook the forfeiture, we would reject Palacios's argument on the merits. Generally, we presume the lower court was aware of, and followed, the law while performing its duties. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092.) Given this presumption, in "the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence." (*Ibid*.) Instead, we presume the lower court "duly considered the evidence presented to it." (*Ibid*.) That presumption applies here. (Cf. *People v. Oliver* (2023) 90 Cal.App.5th 466, 488–490 [noting it was unlikely the superior court knew to consider the petitioner's youth where the resentencing hearing was held before *Harris*, *Moore*,

*Ramirez*, and *Harper* were decided]; *Jones*, at pp. 1091–1092 [declining to presume superior court considered the petitioner's youth where the resentencing hearing was held before *Moore*, *Ramirez*, and *Harper* were decided].)

Palacios suggests the record affirmatively demonstrates the court believed his youth was not relevant to his resentencing petition. At the hearing, the court noted it was concerned about the voluntariness of Palacios's confession. In that context, the court stated, "I didn't decide the issue because we didn't brief it, but the court notes that at the time Mr. Palacios made his statement, he was 18 years old, and evidently the record contains some indication that he suffered from a learning disability, and those are factors that would be considered if this court were to consider the voluntariness of his statement, but the state of the law at this time is that a defendant does not have a right [against] self-incrimination or to be free from self-incrimination at an evidentiary hearing."

Palacios suggests the above comments indicate the court erroneously believed his youth was relevant only if it were to consider the voluntariness of his confession. We disagree. It is apparent from the context the court was simply noting Palacios's youth was relevant to the voluntariness issue; it was not stating his youth was relevant *only* to that issue. Because the record does not refute the presumption the superior court followed the law and considered all relevant evidence, Palacios has not met his burden to show error affirmatively. (See *People v. Lee* (2017) 16 Cal.App.5th 861, 866–867.)

[[End nonpublished portion.]]

19

## DISPOSITION

We affirm the order.

## CERTIFIED FOR PARTIAL PUBLICATION

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.